[No. 14854.   In Bank. — October 8, 1891.]

THOMAS RUTLEDGE, APPELLANT, v. R. F. CRAW-FORD, RESPONDENT.

ELECTION CONTEST — MARKED BALLOTS — INK IMPRESSION — CONSTRUCTION OF CODE. — Upon the trial of an election contest, the fact that two of the ballots, regular on their face, had on the back of each a faint type impression, or "offset," of a portion of the face of a similar ticket, such as is caused by placing the face of one ticket upon the back of another as they come from press, will not justify the court in rejecting such ballots, under section 1206 or section 1207 of the Political Code, in the absence of any proof tending to show that the tickets were so marked for the purpose of distinguishing them from other ballots.

ID. — DISTINCTION FROM OTHER BALLOTS — DESIGN — ACCIDENT — IMPROPER REJECTION OF BALLOTS. — To justify the rejection of a ballot under section 1206 of the Political Code, it must appear that the "impression, device, color, or thing" on the outside thereof was intended to distinguish it from other legal ballots, and the court is not authorized to find such design, when it is just as reasonable to attribute the appearance of the ticket to accident as design.

ID. — SEALING-WAX — STAIN — REASONABLE SUPPOSITION OF ACCIDENT. — The fact that a ballot had on its back a small piece of red sealing-wax, and that another had a small stain, as if made by a drop of oil, does not justify the court in refusing to count the ballots, it being reasonable to suppose that the marks were accidental, and not intended to distinguish the ballots.

ID. — ERASURE IN BALLOT — VOTE FOR CANDIDATE FOR WRONG OFFICE — INTENTION OF VOTER. — Where a ballot had the names of candidates for judge of the superior court printed in lines directly above that of a candidate for state senator, and the name of the candidate for state senator was erased, and that of a candidate for judge of the superior court upon the opposition ticket written opposite the words "state senator," and in line with it, the intention of the voter, as shown on the face of the ballot, must be held to be to vote for such candidate as state senator, and not for the office of judge of the superior court, and it is error for the court to count the ballot for him as candidate for the latter office.

ID. — CONSTRUCTION OF BALLOT — PAROL EVIDENCE. — A ballot is to be construed as any other writing, and while a resort to parol evidence of extrinsic circumstances may be had for the purpose of interpreting what would otherwise be doubtful, it cannot be shown by such or any evidence

that the intention of the voter was anything different from what plainly appears upon the face of the ballot.

ID. — LEGAL EFFECT OF BALLOT — MISTAKE. — A ballot is the only expression of the voter's will, and it must be counted according to its legal effect. When it intelligently shows that a particular person is voted for to fill a particular office, it cannot be counted differently merely because the court may believe that the voter made a mistake in preparing his ticket.

ID. — ERASURE AND SUBSTITUTION OF NAME — INDELIBLE PENCIL. — The fact that upon certain ballots the printed name of one of the candidates was erased with an indelible pencil, and the name of another candidate was written opposite thereto with the same kind of pencil, does not justify the court, under section 1204 of the Political Code, in refusing to count the same for the candidate whose name was written in, and counting such ballot for the candidate whose name was erased, merely because the erasure and change of name was done with an indelible pencil instead of an ordinary lead-pencil or common writing-ink.

ID. — USE OF RED INK. — The fact that upon one of the ballots the printed name of one of the candidates was erased with red ink, and that of an opposing candidate written in place of it, also in red ink, does not justify the court in counting the ballot for the candidate whose name was erased, merely because the erasure and writing was done with red ink.

ID. — SIMPLE ERASURE OF NAME. — Where the name of a candidate is erased from a ballot, and no name substituted therefor, and the words "no vote" are not written after the name erased, the ballot is properly counted for the candidate whose name is erased.

ID. — CONSTITUTIONAL LAW. — The provision of the Political Code requiring that where a voter erases the name of a candidate without substituting another the vote must be counted for the candidate whose name is erased, unless the words "no vote" are written after the name erased, is not unconstitutional either as prescribing an educational qualification for the voter, or requiring him to disclose the secrecy of the ballot.

ID. — COMPLAINT BY CANDIDATE — QUALIFICATION AS ELECTOR — ELIGIBILITY TO OFFICE — JUDGMENT. — A complaint in an election contest, which alleges that the plaintiff, who was one of the candidates, is an elector of the county in which the election took place, shows sufficient authority in him to commence the proceedings, and although the complaint does not allege that he possesses the qualifications required by the constitution to make him eligible to the office, and does not, therefore, entitle him to a judgment that he was elected instead of the defendant, yet the failure to make such allegations does not deprive him of the right, as an elector, to a judgment annulling the election of the defendant.

APPEAL from a judgment of the Superior Court of Sonoma County.

The facts are stated in the opinion of the court.

*A. B. Ware*, and *T. J. Geary*, for Appellant.

The court ruled correctly in disregarding erasures where there were no substitution, and the words "no

vote" were not written, as provided in section 1204, as amended in 1889 (Stats. 1889, p. 425), but erred in ruling that where the erasure was made of both the office and name, the law did not apply. The name of plaintiff could be ascertained from an inspection of the ballots, and should have been counted for him. (*Reynolds* v. *Snow*, 67 Cal. 497.) Although a ballot having a mark on the outside designed to distinguish it from other ballots should be rejected, yet the mark should be designed for that purpose. (*Wyman* v. *Lemon*, 51 Cal. 273; *Kirk* v. *Rhoads*, 46 Cal. 398; *Coffey* v. *Edmonds*, 58 Cal. 521.) The rejection of the ballots having an impression, or "setoff," upon their back was error, as the impressions were clearly the result of accident, and not design. The carelessness or mistake of the printer should not be allowed to defeat the intention of the voter. (*Inglis* v. *Shepherd*, 67 Cal. 469.) These ballots had no "mark or thing thereon by or from which it could be ascertained what person or class of persons used or voted them." (*Coffey* v. *Edmonds*, 58 Cal. 531–536.) The court erred in counting the ballot for defendant, upon which the name of the defendant was substituted for the candidate for senator, and not in place of either of the opposing candidates for judge. (*Donelly* v. *Potter*, 55 Cal. 474; *Fenton* v. *Scott*, 17 Or. 189.)

*C. S. Farquar*, and *J. A. Barham*, for Respondent.

It was within the power of the legislature to determine the mode and manner of erasure or substitution upon the ballot, without inquiry upon the part of the judiciary; and the act of the legislature in fixing the mode and instrument by which the erasure or substitution is required to be made is conclusive upon the judiciary. (*Reynolds* v. *Snow*, 67 Cal. 498.) The court below, as required by section 1858 of the Code of Civil Procedure, followed the plain letter of the law, that the erasure and substitution must be made by lead-pencil or common writing-ink. (*In re Wellington*, 16 Pick. 87; Cooley's Constitutional Limitations, 105, 218, 219; *City of Detroit* v.

*Rush*, 82 Mich. 532; *People* v. *Draper*, 15 N. Y. 532.)
The ballots counted, against defendant's objection, for
plaintiff, upon which his name has been erased by lead-
pencil or common writing-ink, should not have been
counted for plaintiff, because it was the clear intention
of the voter to cast his ballot against plaintiff; and the
portion of section 1204, added by the amendment of
1889, which requires the voter to write the words "no
vote," in the event of an erasure, and no substitution,
is unconstitutional, because it requires an educational
qualification, and discloses the secrecy of the ballot.
(Cooley's Constitutional Limitations, 78, note 3, 761,
762; McCrary on Elections, 45–49, 92, 93, 413; *Morris*
v. *Powell*, 125 Ind. 281; *People* v. *Pease*, 27 N. Y. 81;
*State* v. *Craft*, 18 Or. 550; *Russell* v. *McDowell*, 83 Cal. 80,
81.)  The ballots upon which the respondent's name was
written in place of the name of the candidate for senator
were properly counted for the respondent, as well as for
the appellant, whose name was not scratched.  As the
face of the ballot and the testimony of Judge Crawford
show that there were only three candidates for senator,
and that he was not, nor was any one by his name, or
similar name, a candidate for senator, and considering
this evidence with the fact that Crawford was a candi-
date for judge, the intention of the voter is clear, that
he intended to vote for Crawford for judge, and not for
senator.   (*Inglis* v. *Shepherd*, 67 Cal. 470.)

DE HAVEN, J.— The parties to this action were oppos-
ing candidates for the office of judge of the superior
court of Sonoma County, at the general election of 1890.
The respondent, Crawford, received a certificate of elec-
tion, and this is an action contesting his right thereto.

As a result of the trial and recount in the superior
court, it appearing that the defendant received one vote
more than the plaintiff, the court, on motion of defend-
ant, granted a nonsuit, and dismissed the proceedings.

The plaintiff appeals from this judgment, and claims
that the court erred in counting certain ballots for the

respondent, and in refusing to count others for himself.

1. Two ballots, regular on their face, and with the appellant's name printed thereon for judge of the superior court, were not counted by the court, for the reason that there was on the back of each a faint type impression of a portion of the face of a similar ticket. The impression is known among printers as an "offset," and is produced when there is too much ink upon the type used in printing, by placing one ticket face downward upon the back of another which has preceded it from the press. In our opinion, the court erred in its refusal to count these ballots for appellant.

Section 1206 of the Political Code provides: "When a ballot found in any ballot-box bears upon the outside thereof any impression, device, color, or thing, or is folded in a manner designed to distinguish such ballot from other legal ballots deposited therein, it must, with all its contents, be rejected."

Prior to the adoption of the code, it was the usual practice to have the tickets of the different political parties of a different color or weight or size, so that an observer at the polls could see at a glance and detect the party ticket that was deposited by the voter. It was to prevent this, and secure to the citizen absolute secrecy for his ballot, that the section above quoted and others of the same code were enacted, prescribing for ballots uniformity of paper, color, and size, and in order to justify the rejection of a ballot under this section, it must appear that such "impression, device, color, or thing" on the outside thereof was intended to distinguish it from other legal ballots (*Wyman* v. *Lemon,* 51 Cal. 273); and the court is not authorized to find such design when it is just as reasonable to attribute the appearance of the ticket to accident as design. It is not doubted, as was argued here, that tickets may be marked in this way for the purpose of distinguishing them from other ballots, and to be furnished only to a certain class of voters. But in the absence of any proof tending to show this, the

presumption must be that such an impression was the result of accident, and not intended, and therefore within neither the letter nor spirit of this section, or section 1207 of the same code, which provides that when a ballot bears upon it any impression, device, color, or thing intended to designate or impart knowledge of the person who voted it, it must be rejected.

2. What is said in the preceding paragraph will apply with equal force to the two ballots not counted for appellant, one of which had upon its back a very small piece of red sealing-wax, and the other a small stain as if made by a drop of oil, or something of that nature. It is far more reasonable to suppose that the wax was accidentally placed upon the ticket by the officers of election in sealing the package in which it was returned than to believe that it was designedly placed there as a distinguishing mark before its deposit in the ballot-box; and as to the other, the mark or discoloration is of that character that the most natural conclusion in relation to it is, that it was due to some accidental cause, and was not intended to distinguish the ballot, or impart knowledge of the person who voted it.

3. The court erred in counting ballot marked exhibit 37 as a vote for respondent; the ticket, so far as necessary to be set out, is as follows: —

"18. Judge of the Superior Court, Thomas Rutledge.

"19. Judge of the Superior Court, J. W. Oates.

"20. State Senator, Tenth District, Robert Howe," — with the name "Robert Howe" erased, and that of the respondent written opposite, or in line with it.

We do not see how this ticket can be read as a vote for respondent for the office of judge of the superior court. A ballot is to be construed as any other writing, and while a resort to parol evidence of extrinsic circumstances may be had for the purpose of interpreting what would otherwise be doubtful, it cannot be shown by such or any evidence that the intention of the voter was anything different from what plainly appears upon the face of the ballot. (*People* v. *Seaman,* 5 Denio, 409.) And

when the ballot intelligently shows that a particular person is voted for to fill a particular office, it cannot be counted differently because the court may believe that the voter made a mistake in preparing his ticket. Voting for a person to fill an office for which he is not a candidate may be the result of mistake, or it may be merely the frivolous exercise of the right of suffrage; but no matter whether such action be attributed to folly or mistake, the ballot is the only expression of the voter's will, and it must be counted according to its legal effect. The intention of the voter, as it appears upon the face of this ballot, was to vote for respondent for state senator, and not for judge of the superior court, and it should be so counted.

4. Upon certain ballots the printed name of the respondent was erased with an indelible pencil, and the name of the appellant written opposite thereto with the same kind of pencil. The court refused to count the same for appellant, but did count such ballots as votes for respondent. The respondent insists that the rulings of the court, in relation to the counting of these ballots, are justified by section 1204 of the Political Code. That section declares: "When upon a ballot found in any ballot-box a name has been erased and another substituted therefor in any other manner than by the use of a lead-pencil or common writing-ink, the substituted name must be rejected, and the name erased, if it can be ascertained from an inspection of the ballot, must be counted."

There was evidence introduced tending to show that indelible pencils are not in fact lead-pencils, nor commonly known as such by merchants selling them. The question is thus presented, whether a voter must follow the very letter of this section of the code in preparing his ticket, or have his vote for a particular candidate rejected. We think it very clear that such is not the purpose or the meaning of that section. The code commissioners, in their note to this section, say: "'This section is intended to prevent the use of nitrate of silver, or any other chemical substance which may be written

over a name and not be distinguishable until time brings out the impression; also to prevent the use of pasters, the use of which is subject to two objections: 1. Their liability to come off; 2. Their liability to be fraudulently taken off."

This object of the law—and it is apparent that the legislature could have had no other in view—is attained if the erasure and substitution are made in such a manner as to present at the time and retain the same general appearance as if made by a lead-pencil or common writing-ink. This section, when it declares that erasures and change of names shall not be made "in any other manner than by the use of a lead-pencil or common writing-ink," really means that the erasure and substitution shall not be made in any other style or form, or with any different effect, than would be produced by the use of a lead-pencil or common writing-ink. The law looks only to matters of substance, and does not waste its energy in pursuit of shadows, and if the appearance of having been made with a lead-pencil is produced by the use of an indelible pencil, there is a substantial compliance with the statute, although such a pencil may not, strictly speaking, be known as a lead-pencil. Any other construction would sacrifice the spirit and reason of the law to the mere letter; and yet, it is one of the great maxims of interpretation to keep always in view the general scope, object, and purpose of the law rather than its mere letter. "He who considers merely the letter of an instrument goes but skin-deep into its meaning." (Broom's Legal Maxims, 611.)

"A rigid and literal meaning would, in many cases, defeat the very object of the statute, and would exemplify the maxim that ' The letter killeth, while the spirit keepeth alive.' Every statute ought to be expounded, not according to the letter, but according to the meaning. . . . . And the intention is to govern, although such construction may not, in all respects, agree with the letter of the statute." (*Tracy* v. *Troy & Boston R. R. Co.*, 38 N. Y. 437.)

5. The court erred in counting ballot No. 8 as a vote for the respondent. Upon this ticket the printed name of respondent was erased with red ink, and that of J. W. Oates written in place of it, also in red ink. The respondent contends that red ink is not common ink within the meaning of the statute. We cannot say that it is not such ink, and it is clear that its use is not within the mischief which it is the object of the law to prevent.

6. Upon several ballots the name of appellant was erased and no name substituted therefor, and the words "no vote" were not written after the name erased. These were counted as votes for appellant. The court was correct in this ruling. The statute, in order to guard against fraudulent erasures, has provided this as, the only way in which the voter can manifest his intention to erase a name, when he does not substitute another, and under such circumstances the erasure is not complete unless followed by these words. There is no valid constitutional objection to this requirement. It does not prescribe any educational qualification for the voter, nor require him to disclose the secrecy of his ballot, as contended.

7. The statement or complaint filed herein by appellant does not allege that he possesses the qualifications required by the constitution of this state to make him eligible to the office of judge of the superior court, and it is claimed by respondent that the statement is therefore fatally defective, and for that reason the judgment dismissing the proceeding should be affirmed. It is true that in order to entitle appellant to the full relief asked for, to wit, a judgment that he was elected instead of respondent, the statement should have alleged facts showing that he was eligible. But the statement is not fatally defective if it states a case for any relief (*Perri* v. *Beaumont, ante,* p. 30); and we think that it does. It is alleged that the appellant is an elector of the county of Sonoma, and such being the case, he was authorized to commence this proceeding, and upon proof of the facts

alleged in his statement, was entitled to a judgment annulling the election of defendant.

As the case must be remanded for a new trial, the court below should, upon application, permit the appellant to amend his statement so as to allege the necessary facts showing his eligibility to be chosen to the office the election to which is in controversy here. (*Perri* v. *Beaumont, ante,* p. 30.)

Judgment reversed, and cause remanded for further proceedings not inconsistent with this opinion.

GAROUTTE, J., HARRISON, J., BEATTY, C. J., SHARPSTEIN, J., and PATERSON, J., concurred.

Rehearing denied.