(No. 13598.—Reversed and remanded.)

JOHN CLARKE *et al.* Appellees, *vs.* JOHN BETTENHAUSEN, Appellant.

*Opinion filed February 15, 1921.*

1. ELECTIONS—*petition to contest must show that contestants are electors.* As the proceeding to contest an election is wholly statutory the jurisdiction of the court must be exercised only in accordance with the statute, and the petition to contest must set forth the points on which the election is to be contested, must be verified by affidavit, must be filed within the time prescribed by statute and must allege that the petitioners are electors.

2. SAME—*one petition cannot contest election to two different offices.* Electors may join as petitioners to contest an election, but the petition cannot contest in one proceeding the election of two persons to entirely different offices.

3. SAME—*when electors may correct defects in their petition to contest by filing an amended petition.* Where a petition to contest an election has been filed by electors within the time required by statute and is verified by affidavit, an amendment showing that the petitioners are electors and that the petition is to contest the election to only one office may be made even after the thirty days allowed for a contest have expired, and such amendment may be by way of an amended petition instead of an amendment to the original petition.

4. SAME—*election contest is a statutory proceeding but is tried as in chancery.* An election contest is a purely statutory proceeding, but after the petition is filed the case is to be tried in like manner as in cases in chancery.

5. SAME—*burden is on the contestant to show ballots have been properly preserved.* The burden is on the contestant in an election contest to show that the ballots counted in the contest are those cast at the election and that they are in the same condition as when cast.

6. SAME—*the ballots cannot overcome returns unless they are shown to have been properly preserved.* In an election contest, unless the preservation of the ballots is shown to have been such that there has been no reasonable opportunity for tampering with them they cannot overcome the returns when carefully made; and it is not necessary that an unlawful interference with the ballots be shown by the contestee, but it is sufficient to invalidate them as evidence that the opportunity for interference by unauthorized persons existed.

7. SAME—*any evidence bearing on question of preservation of ballots should be admitted in contest.* In an election contest any competent evidence should be admitted which has a bearing upon the question whether or not the ballots have been properly preserved and are in the same condition as when canvassed, as the question whether ballots or the election returns are the best evidence must necessarily depend upon all the proof that may be legitimately offered which supports or tends to support the re-count as well as that supporting the returns.

8. SAME—*evidence of preservation of ballots goes to determine their weight as evidence in contest.* Under the statute the ballots are admissible in evidence in an election contest without regard to what the evidence shows as to their preservation, but to be controlling as evidence the ballots must affirmatively be shown to have been preserved in the manner and by the officers required by statute.

9. SAME—*election judges are presumed to have discharged their duty in canvassing votes.* Until the contrary is shown, election judges are presumed to have discharged their duty in canvassing the votes, in making returns and in making proper announcement of the vote after the ballots have been canvassed.

10. SAME—*when petitioner in an election contest makes prima facie case that he is an elector.* Proof that the petitioner in an election contest has lived in the precinct up to the time of the election and has voted there establishes *prima facie* that he is an elector of the township, and mere proof that he is foreign born does not overcome the *prima facie* case nor require him to prove his naturalization.

APPEAL from the County Court of Cook county; the Hon. JOHN H. WILLIAMS, Judge, presiding.

FELSENTHAL, WILSON, STRUCKMANN & BERGER, for appellant.

FRANCIS A. HARPER, for appellees.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

At the annual election in the town of Bremen, in Cook county, held on April 6, 1920, John Clarke, John Bettenhausen, H. Peetz and B. Deck were candidates for highway commissioner. William J. Fulton, Herman Seimsen and N. Jasinski were candidates for collector. On the canvass of the returns for highway commissioner the town board declared that Clarke had received 474 votes, Bettenhausen 487 votes, Peetz 77 votes and Deck 57 votes. Bettenhausen qualified. Herman Seimsen was declared elected to the office of collector and qualified. On April 10, 1920, Clarke and Fulton filed a joint petition in the county court under section 113 of the Elections act, setting forth the points on which they would contest the election of Bettenhausen and Seimsen. Bettenhausen and Seimsen were served with summons and filed a demurrer to the petition. On June 3, 1920, the court sustained the demurrer. The petitioners obtained leave and filed on the same day an amended petition, in which they abandoned the contest of the election of Seimsen to the office of collector and sought thereby to contest the election of Bettenhausen, only. Bettenhausen filed a motion to dismiss the amended petition for want of jurisdiction. The court overruled the motion to dismiss and Bettenhausen answered. A re-count of the ballots was ordered in two precincts,—Nos. 2 and 4. There were five voting precincts in the town. On the re-count of precinct No. 2 Bettenhausen lost two votes and Clarke gained four. On the re-count of precinct No. 4 Clarke gained thirty-eight votes but Bettenhausen's votes were the same on the re-count as his votes on the returns. The votes of these two precincts as shown by the re-count, when added to the votes shown by the returns in the other

three precincts, Nos. 1, 3 and 5, gave Bettenhausen 485 votes and Clarke 516. Clarke was declared elected by the county court. Bettenhausen perfected this appeal.

The first contention made by appellant is, that neither of the two petitions conferred jurisdiction on the county court to hear the contest and the court should have dismissed the amended petition on the appellant's motion and have entered judgment against petitioners. Both petitions were verified by the affidavits of the appellees, Clarke and Fulton. The court properly sustained the demurrer to the first petition for two reasons: First, because the petition contained no allegation that the petitioners were electors of Bremen township; (*Masterson* v. *Reed,* 172 Ill. 37; *Adams* v. *McCormick,* 216 id. 76;) and second, appellees can not, under our statute on elections, contest in one and the same proceeding the election of two officers elected to entirely different offices. Appellees had a right to join in the petition as electors to contest the election of either one of the two township officers aforesaid, as section 112 of the Elections act provides that the election of any such officers may be contested by any elector of the town, but could not contest the election of two township officers in one petition. *Browning* v. *Gorman,* 261 Ill. 617.

Section 113 of the Elections act provides that the person desiring to contest an election shall, within thirty days after the person whose election is contested is declared elected, file with the clerk of the proper court a statement in writing setting forth the points on which he will contest the election, which statement shall be verified by affidavit in the same manner as bills in chancery may be verified. The proceeding to contest an election is wholly statutory, and the jurisdiction of courts over election contests must be exercised only in accordance with the statute. The petition must be filed by an elector or electors within the time prescribed by the statute and must set forth the points on which the election is to be contested and must be verified

by affidavit. The first petition in this case was filed by two electors and it set forth the points on which the election would be contested and it was verified by affidavit. The petition was demurrable for the reason aforesaid. As appellees were electors they had the right to amend this petition by making the proper allegation that they were electors, and so make it a proper petition by amendment against the other party. (*Daugherty* v. *Carnine,* 261 Ill. 366.) Such a proceeding is not a chancery proceeding, but after the petition is filed the case is to be tried in like manner as cases in chancery, and may be heard and determined by the court in term time or in vacation, as is declared by section 116 of the Elections act. Of course, if this petition had not been filed by an elector or electors of the town of Bremen there would be no possible way by which it could be amended by substituting the names of other parties as electors after the thirty days allowed to begin the contest had expired. But any amendment can be made to a petition, setting forth the points of contest, filed by electors within the time allowed by statute and which is verified by affidavit, even after the thirty days had expired. (*Dale* v. *Irwin,* 78 Ill. 170; *Brents* v. *Smith,* 250 id. 521.) The amended petition removed all objections found to the first petition by averring that the appellees were petitioners and electors of the town and making it a proceeding against one instead of two different officers. No reason is perceived why such an amendment might not be made by way of an amended petition instead of amendment to the former petition. The proceeding was, in effect, discontinued as to the contestee Seimsen by omitting him as a party to the petition. The court properly refused to dismiss the amended petition.

It is next contended by appellant that the evidence of appellees fails to show the preservation of the ballots in such a manner that there was no reasonable opportunity for tampering with them, and that therefore they cannot

overcome the returns of the election; also that the court erred in sustaining objections of appellees to certain questions of appellant by which he sought to show that the ballots were not properly preserved and that they had, in fact, been tampered with.

The only evidence offered on the question of the preservation of the ballots after they had been received by the town clerk from the election judges was that of the town clerk, William Funk, who testified, in substance, as follows: His office, where he took the ballots, is in a small room about ten by twelve feet, in a livery barn and garage in Tinley Park, which has no safe or vault, and that this office is sometimes locked and sometimes not locked. He runs the livery barn and garage and has an old man there who takes care of the livery business. He does not know how many people came there while he himself was not there and does not know what took place while he was away. He stayed mostly at another place and was not at his office except only a few times after he received the ballots from the election judges. People often come to the livery barn and garage for rigs but they do not generally go into the office. He received the ballots of the five precincts from the election judges the next morning after the election, at about ten o'clock. He took the ballots and piled them on the floor in one corner of his office and they remained there on the floor until he brought them to Chicago for the trial. He and the old man that looked after the business there both had a key to the office. He testified that he knew that the packages containing the ballots had not been tampered with, notwithstanding the fact that the ballots had remained piled on the floor of that office for more than two months before the trial and gave no reason whatever for such knowledge.

An election judge from precinct No. 2 testified that so far as he knew the bag containing the ballots for that precinct was in the same condition as when sealed by him.

The manner in which the ballots of this precinct were sealed, if they were sealed, or the manner of sealing the bag containing the ballots, does not appear in this record.

An election judge from precinct No. 4 testified that he did not know whether all of the ballots cast in that precinct were counted. He was there all of the time that the ballots were being counted. One judge read off the ballots, the clerk kept the tally sheets and the witness did the wiring of the ballots. One of the judges said that he did not know whether a bunch of women's ballots lying on the desk were counted. The other judge, Peetz, said that he believed they were counted. The witness then said that he left it to the other two judges. He testified that he was the judge who delivered the ballots to the town clerk and that they were in the same condition just before the bag was opened in the county court as when he delivered them to the town clerk on April 7, 1920, and that the ballots were then sealed up. He took them to his home the night of the election and kept them there over night in a box in the bed-room. His wife was there while the ballots were in the bed-room. The court, on objection of appellees, refused appellant the privilege of having the witness answer his questions as to what time the witness went to the clerk's office with the ballots, who was with him when he took the ballots to the clerk, and who else besides his wife was at his house while the ballots were there.

The ballots were then opened and counted with the result aforesaid. After the bag containing the women's ballots was opened appellant's counsel asked that the record show that it was opened by untying the string and without breaking the seal on the string. Appellees' counsel claimed that a part of the seal on the bag was broken and that the string was cut 'at a place where the string was not sealed, counsel for appellant still insisting that it was opened by untying the string. The court replied that he did not know whether it was or not, and that there was no proof be-

fore the court as to whether it was sealed or not. The record shows that it was opened without any special inspection by the court at the time.

Appellant called as a witness Eiler J. Peetz, one of the election judges in the fourth precinct, who testified that he and another judge, Cavilla, called all of the ballots of that precinct for the clerks who were tallying; that every ballot was read from top to bottom and that he saw every one of the ballots counted. For the purpose of showing that some of the ballots of this precinct had been marked after they were canvassed by the judges and clerks, appellant's counsel offered, but was not permitted, to prove by this witness the number of ballots that were voted in that precinct that had not been voted for commissioner of highways. The total number of votes cast in that precinct by the voters had already been shown. The court also refused to allow the witness to testify as to how many men's ballots and how many women's ballots were cast in that precinct that were not voted for anyone for highway commissioner, and also refused to allow the witness to testify as to whether or not there were any objections to any ballot being counted. The court also refused to permit similar questions to be asked and answered as to precinct No. 2. It was the contention of appellees' counsel on the trial that the evidence offered by appellant and excluded by the court was immaterial in the absence of a showing that the packages and the ballots had been tampered with. The court sustained that contention and found that there was a substantial compliance with the statute as to the ballots.

The burden of proof rests upon a contestant in an election contest to show that the ballots are those cast at the election and that they are in the same condition as when cast. Unless their preservation is shown to have been such that there has been no reasonable opportunity for tampering with them they cannot overcome the returns when carefully made. It is not necessary that an unlawful in-

terference with the ballots be shown by the contestee, but it is sufficient to invalidate them as evidence that the opportunity for interference by unauthorized persons existed. (*Rottner* v. *Buchner,* 260 Ill. 475; *Dennison* v. *Astle,* 281 id. 441; *Jackson* v. *Winans,* 287 id. 382.) The county court took the opposite view of the law and held that the burden of proof to show want of proper preservation of the ballots was on the appellant. It is also apparent that very little attention was paid by the court or by counsel for appellees to the condition of the bags and of the ballots with reference to the seals placed thereon, if any, by the election judges. The evidence in this record should have shown in detail how these ballots were strung and sealed, if they were sealed, and also as to how they were placed in the bags and sealed, if the bags were sealed. The evidence should have also shown that the election judges delivered them to the town clerk in the identical condition they were in when they left the three judges at the polling places and that no opportunity had been offered to unauthorized persons to tamper with them. The exact condition of the bags and ballots should have been shown at the time the town clerk took them from his office and put them in the handbag or suitcase to take them to the trial, and the evidence should also show that they had been properly preserved during the two or three weeks' time that they were in the suitcase preceding the trial. No satisfactory proof is in the record showing that the proper preservation of the ballots was made at any time after they left the election judges. The court erroneously excluded evidence on the part of appellant that would have a bearing upon the question whether or not the ballots were properly preserved and were in the same condition as when canvassed.

Under our statute the ballots are admissible in evidence in any event, without regard to what the evidence shows as to their preservation. (*West* v. *Sloan,* 238 Ill. 330.) To be controlling as evidence the ballots must affirmatively be

shown to have been preserved in the manner and by the officers required by the statute. (*Roland* v. *Walker,* 244 Ill. 129.) The election judges are presumed to have discharged their duty in canvassing the votes, in making the returns and in making proper announcement of the vote after the ballots have been canvassed, until the contrary is shown. Whether the ballots or the election returns in this case are the best evidence must necessarily depend upon all the proof that may be legitimately offered which supports or tends to support the re-count of the ballots as well as that supporting the returns of the election judges. This court is not in possession of all the evidence, presumably, that bears upon these questions, by reason of the fact that the court excluded proper evidence and tried the case upon the wrong theory of the law.

Appellant also contends that the proof in the record does not sustain the allegations of the petition that the appellees were electors. We think the proof in this record is against that contention. When a contestant shows by his testimony that he lived in the precinct up to the time of the election and had voted there, such proof establishes *prima facie* that he is a legal voter or an elector of the township, and the burden is cast on the opposite party to overcome such *prima facie* case. (*Rexroth* v. *Schein,* 206 Ill. 80; *Behrensmeyer* v. *Kreitz,* 135 id. 591; *Dorsey* v. *Brigham,* 177 id. 250.) There was no proof in the record that the elector born in England was not naturalized. There was affirmative proof that he had taken out naturalization papers, although it was objected to. Such proof should be shown by the naturalization papers when it is required, but it was not necessary for him to offer such proof and it was harmless error. Proof that he was foreign born is not sufficient to overcome the *prima facie* case. *Dorsey* v. *Brigham, supra.*

The judgment of the county court is reversed and the cause remanded.

*Reversed and remanded.*