EWING et al v. HARRIES

No. 4201.   Decided November 8, 1926.   (250 P. 1049.)

*Dey, Hoppaugh & Mark, Walton & Walton,* and *H. C. Allen,* all of Salt Lake City, for appellants.

*Stewart, Alexander & Budge,* of Salt Lake City, for respondent.

FRICK, J.

This is an appeal from a judgment rendered in the district court of Salt Lake county, dismissing an alleged election contest. Many of the matters that are involved on this appeal were before this court in another proceeding. See *Harries v. McCrea*, 62 Utah, 348, 219 P. 533, where a writ of prohibition was denied upon the ground that the district court was not without jurisdiction, as contended by the plaintiff in that proceeding, who is the defendant here.

Before proceeding to the merits, we are required to dispose of a motion to dismiss the appeal upon the alleged ground that the judgment of dismissal was not entered in the proper record as required by our statute.

The record in this case in respect to the entry of judgment of dismissal is precisely the same as was the record in the case of *Robinson v. Salt Lake City*, 37 Utah, 520, 109 P. 817. In that case the motion to dismiss the appeal was interposed upon the same ground that it is interposed in this case, and we there held that the motion could not prevail. The record upon which the motion was based in the Robinson Case is set forth in the opinion in that case, and the reasons why the motion to dismiss the appeal should not prevail, together with the authorities in support thereof, are there fully stated. No good purpose could be subserved by repeating what is there said. Nor is it necessary to enlarge upon the reasons why this case does not come within the rule announced in *Lukich v. Construction Co.*, 46 Utah, 317, 150 P. 298. It must suffice to state, therefore, that the motion to dismiss the appeal in this case is controlled by the decision in the Robinson Case Upon the authority of that case, therefore, the motion to dismiss the appeal should be, and it accordingly is, denied.

After the decision in *Harries v. McCrea* was handed down, the defendant in this action interposed a motion in the distrcit court to strike the amended complaint filed

in the action, and which was considered in the former proceeding upon various grounds, the principal one being that the amended complaint was filed after the time within which an election contest could be instituted and therefore was not subject to amendment. The district court sustained the motion to strike and dismissed the action as before stated. The plaintiffs now insist that the court erred in striking the complaint and in dismissing the action.

The substance of the original as well as the amended complaint is set forth in *Harries v. McCrea,* supra, and it is not deemed necessary to restate what we there said.

It is contended in the briefs of counsel that the opinion in the *Harries v. McCrea Case* conflicts with former decisions of this court; that neither they nor the district court understood its meaning, that the opinion, in many respects, is merely obiter; and that it contains many other defects. In view of the foregoing statements, the writer approaches the consideration of this case with considerable diffidence.

In view of the contention that the former opinion is so obscure in meaning that neither court no counsel could understand or comprehend it, the writer has again carefully read the same, and, after doing so, is somewhat at a loss to know just how he might express himself so as to make his statements clearer. While it is always desirable that the statements in an opinion should be clear and so framed as to bring them within the comprehension of all concerned, yet the writer is well aware of the fact that his ideals respecting clearness of statement are not always realized. I venture the observation, however, that the difficulty respecting the meaning of the opinion arises very largely, if not entirely, from the fact that this court, as is the case sometimes, felt constrained to deny the claims of both parties and hence neither side is in sympathy with our conclusions. It, therefore, is not a matter which should cause much surprise if the attorneys for the respective parties felt somewhat prone to criticize what is said in the opinion. When we add to the foregoing the fact of counsel's

zeal in the causes of their clients, the matter is easily understood.

We pause here to examine briefly into what is in fact decided in the *Harries v. McCrea Case*. We do so, not for the purpose of vindicating our conclusions, but merely to make clearer some of the questions that are involved on this appeal.

Appellants' counsel, in referring to their right to proceed in equity, in their brief say:

"* * * We regarded the general rules of equity jurisprudence as being in force in this state, and we believed that we had equitable as well as statutory grounds for the relief sought by us."

That is, counsel believed that they were entitled to relief in an equitable proceeding. A mere cursory reading of the opinion in the *Harries v. McCrea Case* will, we think, convince any disinterested person that counsel had no real basis for their assumption. It is there pointed out that the decisions of the courts were practically all against counsel's contention. Indeed, the only cases that support them emanate from states where no special statutory proceeding is provided for contesting elections or where the statutes in express terms confer jurisdiction on courts of equity to hear election contests. Since writing the opinion in *Harries v. McCrea*, the writer has re-examined the subject, and is now more convinced than ever that equity courts have no inherent power to inquire into political or quasi political matters, such as election contests, unless authorized so to do by statute, and then only to the extent and in the manner provided in the statute. It is needless to again refer to the cases upon the subject, since they are collated in the opinion in *Harries v. McCrea*, supra. The reasons that courts of equity have no inherent jurisdiction in such matters are, however, so clearly stated by Mr. Chief Justice Ailshie in *Toncray v. Budge*, 14 Idaho, 621, 95 P. 26, that I cannot refrain from citing that case in addition to those cited in *Harries v. McCrea*.

It is, however, contended by defendant's counsel that we held that this action was one in equity " pure and simple." The opinion in *Harries v. McCrea*, however, again shows that the contention is without merit. In stating the questions involved in that case, we said:

"He [defendant] contends (1) that a court of equity has power and jurisdiction to inquire into and to annul an election; and (2) that, although that were held not to be so, yet he insists that this is a statutory proceeding to contest the election of the plaintiff herein, and that therefore prohibition will not lie." 62 Utah, 355, 219 P. 536.

The legal propositions that in our judgment were involved were thus clearly and explicitly stated. We then proceeded to determine the question whether a court of equity had jurisdiction in election proceedings when the right to hold an office by one who has been duly declared to be elected thereto is involved, and, after a full consideration of the proposition and the authorities in support thereof, we stated our conclusion in the following words:

"After a careful examination and consideration of the authorities, the conclusion is forced upon us that where, as in this jurisdiction, the statute provides a remedy to determine the right to an office or the validity of an election, the courts of equity are without jurisdiction, and hence have no power in such matters." 62 Utah, 359-360, 219 P. 538.

Our conclusion upon the first proposition was thus, as we think, clearly stated. The contention, therefore, that we held that this action is an equitable one, cannot prevail. True it is that the writer (page 362 [219 P. 539]) expressed it as his opinion that the original proceeding is "a proceeding in equity pure and simple" and that the district court was without jurisdiction of such a proceeding. The writer, however, qualified that statement in the same sentence in which he qualified that statement in the same sentence in which the excerpt quoted occurs as follows:

"Yet in view of the provisions of our statute to which reference has been made, and in view that the majority of the members of this

court are of the opinion that the proceeding may, under our statute,• be considered as an election contest, and for that reason a peremptory writ of prohibition should be denied and the district court permitted to proceed with the case as an election contest, *I yield to the judgment of the majority.*" (Italics supplied.)

I do not see how I could have have indicated any clearer than I did that my view that the proceeding was purely equitable was not the view taken by the majority, and that I yielded to their judgment in the matter. The foregoing statement occurs in the opinion after I had fully considered our statute relating to election contests. After making the foregoing statement the conclusion of the court upon the second proposition is stated thus:

"All that we here hold is, that the proceeding commenced against the plaintiff herein may proceed as an election contest under the statute."

Here again the conclusion of the court is stated in explicit terms. Now, in view that the propositions to which I have referred in this opinion, and which were raised by the defendant in *Harries v. McCrea,* were the only ones discussed and decided. I am again somewhat at a loss to understand how it can reasonably be contended, as the district court in its opinion says, that counsel contended "that much of the opinion of the Supreme Court was obiter dicta, unnecessary for the decision in the prohibition proceeding, and consequently not controlling upon this court." It may be that in giving my reasons for some of my conclusions, as our Constitution requires me to do, I may have said more than was necessary; but that, if it were true, would not constitute "obiter dicta," as contended by counsel.

It is, however, also insisted that, in view that in the prohibition proceeding we refused to pass upon the question whether the allegations in the complaint filed in this action were sufficient to support an election contest proceeding under the statute, in so refusing we departed from the rule announced in *Parker v. Morgan,* 48 Utah, 406, 160 P. 764,

and in *Burke v. Knox,* 59 Utah, 596, 206 P. 711. In the first case Parker sought to prohibit Hon.A. B. Morgan, as judge of the district court of Utah county, from trying him upon a certain charge that he had violated the provisions of our statute in receiving and collecting illegal fees as county attorney of Utah County and from removing him from office. An examination of the opinion in that case will, I think, make clear that what was there held was this: That the presentation of an alleged excessive claim to the county commissioners of Utah county, for allowance for services rendered by Mr. Parker's stenographer, did not constitute the collection or receiving of illegal fees within the purview of our statute relating to the collection of illegal fees, for which the county attorney could summarily be removed from office. The statute authorized the district court to remove a county attorney from office only if he had demanded and collected illegal fees, and not because he may have claimed an excessive amount for his stenographer's services. It was held, therefore, that the district court was without jurisdiction to proceed further, and hence a peremptory writ of prohibition was issued against the judge. All that was decided in that case was that, in view that Parker was not charged with any act for which the district court had power to remove him from office, therefore the court was without jurisdiction to proceed further in the matter. We did not hold, as was held, in the prohibition proceeding, that the district court had jurisdiction and hence should proceed as in other cases, namely, to determine the sufficiency of the pleadings and all other preliminary matters just as those matters ordinarily are determined.

The case of *Burke v. Knox,* supra, was a proceeding like the one in *Parker v. Morgan,* and the same result was reached. Indeed, the decision in the Burke Case is based upon the decision in the Parker Case.

It is, however, urgently insisted that in the prohibition proceedings we should have passed upon the sufficiency of the complaint filed in this action as a statement in an elec-

tion contest. We stated the reasons in the opinion, both why we declined to do so and why it would have been improper for us to do so. No valid reason has been suggested by counsel why our former holding in that regard is not sound, and we have discovered none. It certainly would be incongruous, in a prohibition proceeding, for this court to suggest, and much more so to direct, what, if any, or to what extent amendments should be allowed in a proceeding of which the district court had a complete jurisdiction, and in the exercise of that jurisdiction has full power to pass upon all proper questions that may arise in the course of the proceeding. Proposed amendments and their sufficiency should, and properly can, only be considered and determined when they are presented. While an appellate court, in a proper case, may suggest that an amendment was permissible, it nevertheless cannot in advance determine whether a proposed amendment in a particular case is permissible or sufficient. And in no event can this court determine in a prohibition proceeding the sufficiency of a pleading except for the purpose of determining whether or not the lower court has jurisdiction of the action or proceeding that is sought to be prohibited. When, therefore, this court has reached a conclusion upon the jurisdictional question, its powers respecting its original jurisdiction are exhausted. Whether the allegations of a complaint are sufficient to permit the introduction of evidence or to support a particular finding or judgment comes within the appellate jurisdiction of this court which should be exercised only on appeal from the court having original jurisdiction. If any authority is necessary to support so self-evident a proposition, we refer the reader to *Ashley v. Three Justices, etc.*, 228 Mass. 63, 116 N. E. 961, 8 A. L. R. 1463, where the powers of a court in prohibition proceedings are very intelligently discussed.

It is contended on behalf of defendant, however, and the district court so held, that the original complaint filed in this action was wholly insufficient to support an election contest,

and, in view that the 40 days had expired when the amended complaint was filed, for that reason alone the amended complaint should be stricken from the files, and that the district court therefore committed no error in striking it from the files and in dismissing the action. As a matter of course, the ruling that the original complaint was so deficient in averment as not to admit of amendment is clearly in conflict with the decision in *Harries v. McCrea*. The holding that the district court had jurisdiction to proceed with this case as an election contest was tantamount to an express holding that the allegations of the original complaint were at least sufficient to authorize all such amendments as would be proper in other contest cases where the amendments are proposed after the time within which a contest proceeding must be commenced.

By what has just been said, we do not mean to be understood as holding that the original complaint was sufficient to support a judgment of ouster in a contest proceeding, but what we hold is that it was at least amendable in certain particulars and to a limited extent.

This brings us to the question respecting the extent and in what particulars may a statement or so-called complaint in an election contest be amended.

It is held in many cases that the complaint or statement in an election contest may be amended as in other proceedings. It is, however, also held that, after the time within which contest proceedings may be commenced, amendments bringing in new or additional grounds of contest are not allowable. To that effect are the following, among other, cases: *Hewlett v. Carter*, 194 Ky. 454, 239 S. W. 788; *Ashley v. Three Justices, etc.*, 228 Mass. 63, 116 N. E. 961, 8 A. L. R. 1463; *Lewis v. Bandy*, 45 Okl. 45, 144 P. 624; *Widmayer v. Davis*, 231 Ill. 42, 83 N. E. 87; *Clarke v. Bettenhausen*, 296 Ill. 373, 129 N. E. 803; In re Snodgrass, 267 Pa. 494, 110 A. 293; Dunmore Borough's Election, 264 Pa. 231, 107 A. 125; *Rutledge v. Crawford*, 91 Cal. 526, 27 P. 779, 13 L. R. A. 761, 25 Am. St. Rep. 212; *Sawin v. Pease*, 6

Wyo. 91, 42 P. 750; *Bingham v. Johnson,* 193 Ky. 753, 237 S. W. 1077. In all of the foregoing cases it is held that, where a ground for contest is attempted to be stated but the statement in that regard is defective, even where it is grossly so, the complaint may be amended so as to cure the defective statement of the ground of contest and that such an amendment may be made after the time within which a contest must be commenced. In *Rutledge v. Crawford,* supra, under a statute similar to ours, the Supreme Court of California held that an amendment alleging the qualifications of a contestant which were omitted from the original complaint was proper even after the case had been reversed by the Supreme Court. Indeed, in all of the foregoing cases it is held that nonjurisdictional matters may be supplied by amendment after the time within which a contest proceeding must be commenced. It is, however, held that jurisdictional defects and new grounds of contest may not be brought into the proceeding by amendment unless such amendment is proffered within the time aforesaid.

It is alleged in the original complaint that a sufficient number of voters were compelled to vote for Harries at the election, which votes, but for such compulsion, would have been cast for another candidate, and that the number of votes so cast was sufficient "to change the result of such election." It is therefore, in effect, alleged that a sufficient number of votes was cast for Harries, by means of compulsion which was illegal, which would not have been cast for him, and that such number was sufficient to change the result of the election. The statement, however, defective, is nevertheless a statement that Harries received the benefit of votes through illegal means, which he was not entitled to and which but for such illegal means would not have been cast for him sufficient in number to have changed the result of the election. Plaintiffs should thus have been permitted to amend their pleadings if they elected to do so, so as to comply with Comp. Laws

Utah 1917, § 2414. In striking the complaint upon the ground that it was not amendable, the plaintiffs were denied a legal right.

We shall not now pause to enter upon a review of the cases hereinbefore cited. It must suffice to say that an examination of them will disclose that, where the amendments are offered to cure defects in averment without alleging new grounds of contest, they are liberally allowed. It is true that there are some cases—namely, *Crownover v. Millar,* 45 Nev. 81, 197 P. 817; *Pearson v. Alverson,* 160 Ala. 265, 49 So. 756; *Batterton v. Fuller,* 6 S. D. 257, 60 N. W. 1071; and *Gillespie v. Dion,* 18 Mont. 183, 44 P. 954, 33 L. R. A. 703—where a stricter rule is enforced. In all of the cases last cited, however, it is held that, inasmuch as election contests are purely statutory, the provisions of the statute must be strictly construed and followed. Those cases, therefore, can have no influence under a statute like ours, in which it is provided that its terms must be liberally construed.

Complaint is also made by both the court and plaintiffs' counsel that we failed to pass upon the following constitutional provision: "There shall be no union of church and state nor shall any church dominate the state or interfere with its functions." Article 1, § 4. Indeed, in the court's memorandum opinion, which is made a part of the record on this appeal, it is very strongly intimated that if we had considered that provision the result in the prohibition proceeding might have been different; that is, had we done so we might have arrived at the conclusion that a court of equity had jurisdiction. We desire to state that we did not consider the constitutional provision referred to because we did not think it had any bearing upon the questions presented in the prohibition proceedings. We are still of the same opinion. In view, however, that it is strongly intimated that our conclusion in that regard was erroneous, we shall, as briefly as possible, consider the question now.

The constitutional provision referred to is found in what the framers of the Constitution denominated a "declaration of rights." It will be observed that there is nothing contained in the foregoing declaration which was not a part of the law of this country, written and unwritten, and of every state in the Union when the foregoing provision was written into the Constitution of this state. The mere fact that it was written into our Constitution is therefore not controlling in determining the jurisdiction of courts. In the same article of the Constitution (section 11), in referring to the Courts, it is provided:

"All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, which shall be administered without denial or unnecessary delay; and no person shall be barred from procecuting or defending before any tribunal in this state, by himself or counsel, any civil cause to which he is a party."

There is no intimation there that the courts are given power to pass upon purely political questions, but it is clearly stated that the courts are always open for the enforcement of such rights and the redress of such wrongs as from time immemorial have been recognized as proper for the courts to consider. The power to consider political questions and the vindication of rights growing out of or incident to such questions in our form of government is not an inherent power of the courts. Courts can exercise powers respecting political matters only to the extent and in the manner provided by the legislative power, which represents the political power which inheres in the people. True it is that proceedings in the nature of quo warranto, by which political rights to a limited extent could be inquired into at common law, have, in a modified form, become a part of our jurisprudence, but such questions as election contests, where the result of popular elections, legally called and held, may be reviewed and under certain conditions may be changed or annulled, can only be considered by the courts if authorized thereto by statute, and then

only to the extent and in the manner provided in the statute. But, assuming for the moment that the constitutional provision referred to authorizes a judicial investigation respecting the matters therein enumerated, is it not pertinent to ask in what way, if at all, does the fact, if it be a fact, that a large number of church members unite or join their efforts in bringing about the election of a particular person to a particular office, in this case a county sheriff, "dominate the state or interfere with its functions?" The state itself is not concerned whether A. or B. is elected to a particular office, but the people may be greatly interested. It is not a "function of the state" either to nominate or to choose candidates. · That is purely a political question, intrusted to the people while acting in their political capacity as electors. True, all laws are enforced in the name of the state, but they must nevertheless be enforced in such courts and in such manner as the Legislature may provide.

Keeping in mind the political rights of the electors of this state, how can a court prevent any number of them, whether they are churchmen or laymen, whether they are members of any particular church or denomination or whether they have no church affiliations whatever, from combining and uniting their efforts to bring about the election of a particular candidate or any number of candidates? True, the law forbids certain acts respecting the conduct of elections on the part of both the candidates and the electors and punishes the violations of such law. Punishment in that regard, however, can only be visited on the offenders and not on the whole community by annulling the result of an election lawfully called and held. Can it be said to be unlawful for leaders of a church organization to urge in the strongest possible terms the members of such organization to combine ‚and unite their efforts for the purpose of electing a particular candidate to an office, for the reason that such candidate promises to make every effort to enforce the criminal laws or some particular criminal law? That, as appears in plaintiffs' complaint, is precisely the grievance here.

If it is not unlawful for one church organization to do so, is it unlawful for the members of other church organizations to join their efforts with the members of the first church organization to bring about the result just stated? Can any court pass an intelligent judgment or promulgate an intelligent rule in respect to how far a churchman may go by oral or written speech to induce his fellow church members to vote for a particular candidate? If such an attempt were made by a layman, and one who had no church affiliation, no one would even pause long enough to think about the matter. In view, however, that it is alleged to have been done by a churchman, and one who possesses what is termed ecclesiastical powers, it is contended that it constitutes church influence which will authorize a court to annul a particular election legally called and held. Now it may well be that a churchman, and especially one who is clothed with what are termed ecclesiastical powers, may have greater influence over the church membership than a mere layman would have. Such a churchman, however, possesses all the rights and privileges of a citizen and elector, and has a right to reason with his fellows precisely as any one else. How can a court, then, draw the line where the right of the citizen ends and the influence of a churchman begins? Again, how can a court determine whether the voter was influenced by what a church leader said as such or by what he said as a citizen? Moreover, if the voter was influenced by the churchman, did that influence predominate over all the other influences that usually affect the American voter in exercising the franchise?

Let it be assumed, however, that a court of equity has the power to inquire into and to determine what influenced the voters to cast their ballots for a particular candidate, or, if all the candidates of a particular party organization are in question, what induced them to vote for the candidates of such party. If the court should do so, what method of procedure will the court pursue to determine what its findings and judgment should be? Is the court going to compel

the electors to come before it and require them to state for whom they voted and what caused them to do so until such a number have appeared and testified as will change the result of the election, or will the court determine the question from what was published in the newspapers, and from the statements, sermons, speeches, and discourses of the different churchmen? If the method first suggested were attempted, then, unless the electors volunteered the information, it is not easy to perceive how a court could compel them to testify respecting the influence that induced them to cast their votes and for whom they voted. No doubt a voter, who has violated some provision of the election law which would make his vote illegal, could be required to testify for whom he voted so that his vote might be canceled and deducted from the number cast for the candidate or candidates for whom he had voted, but we know of no law which would authorize a court to compel a voter who has cast a legal ballot to disclose for whom he voted or what caused him to do so. If the court should, however, determine the question by merely receiving in evidence the published matter, if any, and the speeches, discourses, declarations, and sermons of the churchmen, how could it judicially determine what voters, if any, were influenced and whether such influence was the sole or predominating influence that controlled their votes? In case the majority was considerable, say from 5,-000 to 10,000 votes or more, it would be utterly impossible to arrive at an intelligent result by the latter method and almost equally so to interrogate the individual voters if that were permissible. Moreover, if it was alleged that the influence was state wide, and affected state officers, what particular court or courts would have jurisdiction, and how many different actions could be instituted within what time, and by whom?

Many other reasons could be suggested why it is impossible for a court to lay its finger upon or to measure or distinguish the influence which controlled a particular elector in one of our elections as they are usually held. Is it not of

utmost importance, therefore, that, if the result of a popular election duly called and held is to be assailed, it be done in accordance with the provisions of the statute enacted for that purpose? To permit a court of equity to pass upon such matters without any regard to any statute, and by declaring a particular result which, in the nature of things, can be no more than mere conjecture, would be far more pernicious in the long run than would be the alleged interference that is complained of here. The evils of so-called interference by church organizations will in time be corrected by the church members themselves. While men and women may subscribe to one religious faith or creed, we all know that they differ widely in their political faiths or creeds and that they ordinarily are very tenacious in maintaining the latter. No church organization can therefore, for any considerable time, control its members politically. Then again, if it is attempted by church leaders, it will cause resentment among the members, and will thus counteract and frustrate the purpose of the leaders. In this connection it is also important to remember that there are still numerous ills that cannot be cured by either laws or courts, and that is especially true in respect to our social and political life. This has many times in many ways been expressed by lawyers and laymen, but by no one better than by Dr. Goldsmith in his immortal poem entitled "The Traveler," a few lines of which I am here tempted to paraphrase slightly thus:

> "How shall, of all that human hearts endure,
> That part which laws or courts can cause or cure!"

As is well intimated by Mr. Chief Justice Ailshie in the case hereinbefore referred to, political questions and the evils incident thereto must be cured, if cured at all, by the people themselves. Tolerance and intelligent discussion of such matters will be far more fruitful in accomplishing reform than lawsuits. If, however, our election statute is defective or insufficient, let it be amended so as to meet the defects.

In view that the plaintiffs were entitled to the judgment of the district court respecting any specific amendment they might present to the court, and, in case the district court disallowed such amendment, also had the right to the judgment of this court on appeal respecting the legal sufficiency of such specific amendment, and in further view that the district court, by striking plaintiffs' original amended complaint from the files, without giving them an opportunity to offer any specific amendment so as to make the amended complaint conform to the contest statute, so far as such amendment is permissible, and having announced that the amended complaint could not be amended and that no amendment would be permitted, the plaintiffs were deprived of a substantial right.

The judgment should be, and it accordingly is, reversed, and the cause is remanded to the district court, with directions to permit the plaintiffs to amend their complaint, if they desire to do so, to the extent and for the purposes herein indicated; plaintiffs to recover costs on appeal.

THURMAN and CHERRY, JJ., concur.

GIDEON, C. J., (concurring).

Complaint is made on this appeal of the order of the trial court in granting respondent's motion to strike from the files the amended complaint. Whether the court erred in granting that motion is the only question to be determined on the appeal.

I concur in the reasoning and in the conclusions of Mr. Justice FRICK in holding that the court erred in granting that motion and in a reversal of the judgment for that reason. I, however, regard the discussion of section 4, art. 1, of the state Constitution, in no way germane to the issues involved here or that can be involved on the trial of the case. Statements or opinions respecting the scope and limitation of that section of the Constitution are necessarily dicta, and

cannot control the court's opinion should a case ever be before the court requiring a construction of that section of the Constitution. Courts are not required to and should not attempt to define the rights of citizens under a constitutional provision unless and until a consideration and construction of such provision is necessary in determining the rights of litigants then before the court.

STRAUP, J.

I concur in the reversal of the judgment. What is said concerning the constitutional provision I think is unnecessary to the decision, and hence do not concur therein.