## PAYNE v. HODGSON.

No. 1946.  Decided August 10, 1908 (97 Pac. 132).

1. ELECTIONS—CANVASSING BOARD—POWERS.  Under Comp. Laws 1907, section 891, relating to city elections, which provides that "on the Monday following any election the city council . . . must convene and publicly canvass the result and issue certificates of election to each person elected by a plurality of votes," the council has no power to inquire into either the legality of the nominations or the legality of the votes cast, or into the regularity of the official ballot, but is bound to issue a certificate of election to the person ascertained to have received the largest number of votes for a particular office.

2. SAME—CONTESTS—NATURE AND FORM OF REMEDY.  A statutory proceeding to contest an election merely gives a cumulative remedy, and generally a contest can only be made on the grounds enumerated in the statute.

3. SAME—CONSTRUCTION OF STATUTE.  In an election contest instituted under Comp. Laws 1907, section 914, the contestant can not question the regularity or validity of the proceedings of conventions or committees in making or filing nominations, nor can the action of the officer whose duty it is to make up the party tickets and prepare the official ballot be reviewed, which can only be done by direct proceeding before the election, so that errors, if found, may be corrected.

4. SAME—NOMINATIONS—BALLOTS—CANDIDATE NOMINATED BY MORE THAN ONE PARTY. Under Comp. Laws 1907, section 822 et seq., relating to elections, which authorize a convention or "organized assemblage of voters or delegates representing a political party" which polled at least two per cent. of the votes at the last election to make and certify nominations and to appoint a committee with power to make nominations and fill vacancies, and provide for the printing of each party ticket on the official ballot in a separate column and under the party designation and emblem, while a convention can nominate candidates for but one party, there is no requirement that the candidates must be members of such party, and either a convention or its committee may lawfully designate as its candidate a person who is also the candidate of another party for the same office, and in such case it is the duty of the officer who makes up the ballot to place such person's name in each party ticket, although the result is that it appears more than once on such ballot.

APPEAL from District Court, Third District; T. D. Lewis, Judge.

Election contest by Alden E. Payne against Oliver Hodgson to determine the right to the office of city councilman of Salt Lake City. A demurrer to the statement of contest was sustained, and contestant appealed.

AFFIRMED.

*S. P. Armstrong* for appellant.

*Stephen L. Richards* for respondent.

FRICK, J.

This proceeding was commenced by the appellant to contest the election of respondent, who was declared elected to the office of city councilman for one of the municipal wards of Salt Lake City. The action is based on section 914 of the Compiled Laws of Utah of 1907, which provides as follows:

"The election of any person to any public office, the location or relocation of a county seat, or any proposition submitted to a vote of the people may be contested: (1) For mal-conduct, fraud or corruption on the part of the judges of election at any polling place, or of any board of canvassers, or any member of either board, sufficient to change the result; (2) when the incumbent was not eligible to the office at the time of the election; (3) when the incumbent has given or offered to any elector or any judge or canvasser of the election any bribe or reward in money, property, or anything of value, for the purpose of procuring his election, or has committed any other offense against the elective franchise defined by law; (4) when illegal votes have been received, or legal votes have been rejected at the polls sufficient to change the result; (5) for any error of any board of canvassers or of the judges of election in counting the votes or declaring the result of the election, if the error would change the result; (6) for any other cause which shows that another person was legally elected. The term incumbent in this section means the person whom the canvassers declare elected."

The statement of contest, as it is denominated by the statute, setting forth the grounds of contest, is too long to be set out in an opinion. The principal facts, however, upon which the contest rests may be briefly stated as follows: In November, 1907, there were four political parties which placed in nomination certain named candidates to be voted for at the ensuing city election as councilmen for the First Municipal Ward of Salt Lake City, namely, the Socialist, Republican, Democratic, and American Parties. These candidates were regularly nominated by the respective parties in delegate conventions regularly held by each party, and the nominations of the several conventions were regularly certified to the city recorder as provided by law for the purpose of having the names of the nominees placed upon the official ballot, which, under the law, must be prepared by the city recorder. After the nominations had been certified as aforesaid, and within the time provided by law, the candidate nominated by the Republican Party convention declined the nomination, whereupon the committee representing the Republican convention filled the vacancy occasioned by the declination aforesaid by nominating and certifying the name of the respondent (who had been nominated and certified by the Democratic

convention as the Democratic candidate) as the Republican candidate for the office aforesaid. In doing this the Democrats and Republicans united upon respondent as the candidate for both of said parties. The appellant was the candidate chosen by the American convention, and was placed upon the official ballot under that party designation, while respondent's name was placed upon the official ballot under both the Democratic and Republican Party designations. After the declination of the regularly nominated Republican candidate had been filed as the law requires, and the name of the respondent had been substituted as the Republican candidate as aforesaid, the appellant filed written objections with the recorder as provided by section 832, Comp. Laws 1907, and protested against placing the name of respondent upon the official ballot under the designation of the Republican Party, and insisted that respondent's name should be placed upon the official ballot but once, and as a Democrat. The manner and form of making up the official ballot, and how the nominees of each party must be placed thereon, will appear hereafter. In his protest as aforesaid the appellant, in substance, contended that the committee representing the Republican convention had no authority to substitute a Democrat or any other person who was not affiliated with the Republican Party and who did not believe in its principles upon the Republican ticket; that it was unlawful to place the name of any candidate more than once upon the official ballot; and that to do this was a fraud both upon the Republican voter and upon the appellant. The recorder overruled the objection and protest of appellant, and placed respondent's name upon the official ballot under both the Democratic and Republican designations and emblems. In this way respondent's name appeared twice upon the official ballot, once as a Democratic and once as a Republican nominee. At the ensuing election the respondent as a Democrat received less votes than appellant, but, when all the votes respondent received both as a Democratic and Republican nominee were added together, respondent had more votes than appellant. The election officers made due return of the votes to the city

council which under the statute must canvass them and declare the result. After a canvass duly made by that body, it added the Democratic and Republican votes which were cast for respondent, and declared him duly elected. Respondent demurred to appellant's statement upon the ground that the same did not state facts sufficient to entitle him to the relief prayed for, or to any relief. The district court, upon a hearing on the demurrer, sustained the same, and hence this appeal.

Appellant's first contention is that in adding the votes cast for respondent upon both tickets the canvassing board committed error, and that this error is one contemplated in subdivision 5 of the section set out at the beginning of this opinion. Is this contention sound? Section 891, so far as material here, provides:

"On the Monday following any election, the city council . . . must convene and publicly canvass the result, and issue certificates of election to each person elected by a plurality of votes."

It is conceded that from the face of the returns it was made to appear that the respondent had received the highest number of votes cast for the office for which he was a candidate. This being so, the city council, under the statute, as a mere canvassing body, could do nothing else than to declare him elected. But it is contended that the respondent was not regularly nominated, and that he had no right to have his name appear upon the official ballot as a Republican, and hence the votes cast for him as such should not have been added to the votes he received as a Democrat. The statute, however, says that the person who has received a plurality of the votes shall receive a certificate of election. It does not say that a person may be elected only by American, Republican, Democratic, or Socialist votes, but that, if he has received a plurality of all the votes cast at the election, he is to be declared elected. The canvassers had no power to inquire into either the legality of the nominations or the legality of the votes cast at the election, or into the regu-

larity of the official ballot. Their power was exhausted when they had canvassed the returns and had ascertained who had received the highest number of votes cast for a particular office. (*Chamberlain v. Hedger*, 12 S. D. 135, 80 N. W. 178; *Pigott v. Bd. Com'rs*, 12 Mont. 537, 31 Pac. 536; *Miller v. Pennoyer*, 23 Or. 364, 31 Pac. 830.) This contention must, therefore, be overruled.

With respect to the contentions of appellant that the nomination of respondent by the Republican committee was unauthorized and illegal, and that the name of respondent was illegally placed upon the official ballot by being placed thereon more than once, the respondent insists that these are not among the grounds for which an election contest · is authorized by the statute quoted above, and hence cannot be considered in this proceeding. · It is true that these matters are not specified as grounds of contest. Election contests are purely statutory, and generally an election may be contested only upon the grounds enumerated in the statute. In case the incumbent's right to an office is questioned upon grounds other than those specified in the statute giving the right to contest, it may generally be done by *quo warranto*. In such a proceeding, however, nothing is determined except the incumbent's right to the office, and the person instituting the proceeding, although he may claim the office, cannot be substituted in the incumbent's stead. By some courts it is held that, where a right to contest an election is given by statute, the statutory remedy is exclusive. It seems to us, however, that the weight of authority is that the statutory remedy is cumulative merely. In 15 Cyc. 393-396, the rule is stated as above indicated, and the cases upon this question are there collected. Moreover, with respect to the question of objecting to the manner of filing and the form of nomination certificates in which the respective nominations are certified to the officer whose duty it is to prepare the official ballot, the ruling of such officer with respect to these matters is by section 832 made final, subject only to the right of the party whose certificate is objected to to amend or correct the same within a specified time. This, however, does not prevent a

party from applying to a court, and from testing, in a proper proceeding, the correctness of the ruling of the officer whose duty it is to pass on the objections. This has frequently been done as appears from the decided cases under statutes similar to our own. The question, however, is not the power of courts to examine into and pass upon the rulings of the officer who passes upon nomination certificates, but rather whether an election contest is the proper proceeding in which the courts may consider and pass upon such questions. In making search for cases upon this point we have been able to find but two cases, namely, *Crawford v. Norris,* 37 Neb. 299, 55 N. W. 1086, and *Price v. Lush,* 10 Mont. 61, 24 Pac. 749, 9 L. R. A. 467, in which the questions with respect to the form and filing of the nomination certificates and the form of the official ballot were considered in an election contest. The latter case has, however, been overruled upon this point in the later case of *Stackpole v. Hallahan,* 16 Mont. 40, 40 Pac. 80, 28 L. R. A. 502. In the case of *Miller v. Pennoyer, supra,* these questions were passed upon *pro forma* in a mandamus proceeding with the observation that they were not regularly before the court. In an election contest, as we construe the law, the contestant cannot question the regularity or validity of the proceedings of conventions or committees in making or filing nominations of candidates, nor can he in such a proceeding review the action of the officer whose duty it is to make up the party tickets and from them prepare the official ballot. In order to reach these questions, the actions of the officer in filing the nominations and in making up the official ballot must be reviewed by a direct proceeding, and, to be of any avail, it must be done before the election is held so that errors, if any are committed in these particulars, may be corrected before and not after an election. After an election the voters have, in effect, ratified the action of the conventions or committees and the contestant in an election contest is limited to matters occurring at or in relation to the election proper. In one sense, therefore, what we shall hereafter say may be *obiter.* In view, however, that the questions whether one and the same person may be nominated by con-

ventions or committees representing different political parties, and, in the event this is done, whether the name of the candidate so nominated may be placed upon the several party tickets and his name likewise placed more than once upon the official ballot are squarely presented and argued by counsel, we have concluded to pass upon them for the following reasons: (1) Because the law, the facts, and the interests involved would be the same in any form of action; and (2) because the manner of making and certifying nominations and of preparing official ballots is a matter that not only concerns every officer whose duty it is to pass upon and file nomination certificates and from them prepare the official ballot, but it is also a matter of general public interest and concern to have the statute governing these matters construed. It is perhaps true that appellant should have commenced a proceeding against the recorder to prevent him from placing respondent's name upon the ballot more than once. If he had done so, however, in commencing his action in the district court, the decision either way in that court could not have been reviewed by this court in time to make it availing for the election then to be held, and the result would perhaps have been the same if appellant had commenced the proceeding in this court directly. What is true of this case in view of the shortness of time intervening between the filing of nominations and the ensuing election is equally true of all similar cases. From every point of view, therefore, it seems but fair to the public that the questions be determined now.

Proceeding, therefore, to the consideration of the question of making nominations we find that by section 822 any political party which presented candidates at the last preceding election may nominate candidates; that a convention is an organized assemblage of voters or delegates representing a political party which at the last election preceding the holding of such convention polled at least two per cent. of the entire vote cast in the city, county, or other political division or district for which the nominations are made. It is also provided by this section that a committee appointed by any

such convention may make nominations when authorized to do so, and by section 834 it is provided that such a committee, when authorized by a convention, may fill any vacancy that may occur in the nominations as made, and that such nominations by such committees when duly certified to shall have the same force and effect as the certificates made by the convention would have. The form of certificates and time and manner of filing them is also provided for. In section 836, so far as applicable here, it is provided:

"It shall be the duty of the recorder of any city . . . to provide printed ballots for every election of public officers in which the voters . . . of such city . . . participate; and to cause to be printed on the ballot the name of every candidate whose nomination has been certified to, or filed with, such city recorder . . . in the manner provided by law."

In section 839 the form of the official ballot and its arrangement are provided for in substance as follows: The nominees of any political party shall be placed under the party name on the official ballot; that it shall be lawful to designate the party by an appropriate emblem or design, but no two sets of nominees shall use the same emblem or device.

"Each list of candidates for the several parties . . . shall be called a ticket and be placed in a separate column on the ballot in such order as the authorities charged with the printing of the ballots shall decide. The columns containing the lists of candidates, including the party name and device, shall be separated by heavy parallel lines."

This section contains additional matter indicating the intention of the Legislature that all the names of the nominees shall be placed on the official ballot, but the foregoing is deemed quite sufficient to show that each party convention certifies up a full list of the candidates nominated by such convention or its authorized committee, and that the names of all candidates are then printed in the column or party ticket allotted to such party. Each party then, in effect, has a ticket of its own containing a full list of all its candidates which is identified by the party name and emblem or device, if there be

one. The manner of voting is also provided for, which is by either voting the whole ticket by simply making the voting mark in a large circle which is placed immediately beneath the party name and emblem and over the names of the candidates, or, in case one desires to vote only a part of the ticket, by either placing the voting mark opposite the name of the candidate he desires to vote for or by placing the mark in the large circle and by drawing a pen mark through the name of the rejected candidate. If one desires to vote for another in place of the candidate he has scratched, this may be done by placing the voting mark opposite the name of the opposing candidate on another ticket. The same thing is accomplished in using the voting machine by operating either the knob on the voting machine which votes the whole ticket or by operating the knob attached to the smaller levers which control the names of each candidate upon each party ticket. The result of the vote is the same in either case. Appellant contends, however, that each convention can represent but one political party, and, in order to make legal nominations, such convention must represent a particular party, and not combine with some other party. It is no doubt the spirit and purpose of the law that a convention authorized to make and certify nominations shall represent but one political party, and that several political parties may not combine as one joint convention, and then in such convention make nominations representing both parties. Nor is it the purpose of the law to permit one political party to nominate more than one list of candidates under its party name or emblem, nor to join its name with another political party so as to nominate a list of candidates, or to nominate the same or another list of candidates under its name when joined or connected with some other political party. A convention composed of two parties, or one party acting for itself and for another party, would not be one as contemplated by section 822. We cannot, however, lose sight of the fact that it is the convention only that must represent a political party or "an organized assemblage of voters or delegates representing a political party." Such a convention or organized assemblage of voters may as a mat-

ter of inherent right nominate any qualified elector regardless of his political faith or creed, and may certify his nomination. Indeed, we know of no law which prevents such a convention from nominating any person whether qualified to hold office or not. The law only prescribes the qualification of electors and officers, and not of candidates. The disqualification of a person to hold an office is a ground of contest, but, independently of the right of contest, such right may always be inquired into in a proceeding in the nature of *quo warranto*. But we know of no law which would authorize the official whose duty it is to receive and file the certificate of nominations and from them prepare the official ballot to pass upon the qualifications of candidates. Nor do we think there is any power to do this except by the courts, and then only when the disqualified person assumes to discharge the functions of a public office. The law does not concern itself with respect to the political faith of those who are chosen to fill the offices. If they possess the legal qualifications and are duly elected by the requisite number of votes, the law protects them in their right to discharge the duties and in the enjoyment of the emoluments of the office, regardless of their political affiliations. This in the nature of things, cannot be otherwise; and, if this be conceded, how can it be said that the law takes any notice whatever of the political faith of any nominee of any political party?

Applying the foregoing reasoning to this case, in what way did the committee that made and certified the nomination of respondent violate any of the provisions of the election law, or of any other law of this state? It has frequently been held (and, upon principle, such must be the law) that a convention may authorize a committee to do what the convention could lawfully do. If the Republican convention thus could have nominated the respondent, why could not the committee do this? When the convention authorized and directed the committee to fill any vacancies, unless restricted, the committee could select any person which in its judgment was suitable and available, and the convention, in advance, ratified what the committee did in carrying out the instructions

given to, or the duties imposed upon, such committee by the convention. It is true that appellant, both in his objections before the recorder and in his statement of contest, alleged that the committee representing the Republican convention had no authority to nominate respondent. But this allegation in the form as made is insufficient for two reasons: (1) The statement as made is a mere conclusion of the pleader, since no facts are alleged from which the want of authority either appears or can be inferred; (2) from the subsequent allegations it is clearly inferable that the pleader attacked the authority of the committee upon the sole ground that the committee represented the Republican convention, and that a nominee of such committee would have to be a Republican. This would no doubt be true if the convention had required the committee to select a Republican. Where, however, authority is conferred upon a committee to fill possible vacancies, the restrictions, if any, should be clearly stated by the one who objects to the action of the committee in that regard. The allegations in this regard are therefore insufficient. In the absence of any restrictions, a committee may exercise its own judgment in the selection of a person to fill a vacancy. Moreover, the motive of such convention or committee in making the nominations cannot legally be inquired into, and certainly not at the instance of an opposing candidate. This is a matter to be discussed with the voters, and is not, and cannot well be, controlled by law. In the long run it would no doubt prove unwise to attempt it. There are many matters relating to religious and political affairs under popular forms of government that the courts, in the absence of express constitutional or statutory provisions, may not interfere with, and among them are the regulation of political parties, the acts of their conventions and committees. In 15 Cyc. 330, it is said:

"It is much more proper that questions which relate to the regularity of conventions or nomination of candidates and the constitution of committees should be determined by the regularly constituted party authorities than to have every question relating to a caucus, convention, or nomination determined by the courts, and thus, in effect, compel them to make party nominations and regulate the details of party procedure instead of having them controlled by party authorities."

The question respecting the right of a political party convention or its committee to nominate any person of any political faith or creed is also thoroughly considered in the case of *Huchinson v. Brown*, 122 Cal. 189, 54 Pac. 738, 42 L. R. A. 232. The decision in that case is to the effect that such a right is inherent. We are firmly of the opinion that the people have the inherent right to organize political parties, to hold delegate conventions, and, either through them or their authorized committees, to present candidates to be voted for at any election regardless of the political views or creed of such candidates. The Republican committee in this case did no more than this in selecting and certifying the name of respondent as the Republican candidate for the office of city councilman, and, when the committee filed the nomination, it was the duty of the recorder, if the certificate was regular in form, to place respondent's name in the list of names certified to under the designation of the Republican Party. This the statute required the recorder to do. Appellant's contention in this regard must therefore be overruled.

This brings us to the last question to be considered, namely: Can the name of a candidate be placed upon the official ballot more than once, and, if this be done, is it a fraud upon the voter or upon any one to do this? By keeping in mind the several sections of the election laws of this state to which we have referred, and from what has been said above, it seems clear that, where a person is nominated by more than one political party, he not only has the legal right to have his name placed upon the party ticket of each party whose nominee he is, but it is the duty of the officer who makes up the party tickets and from them prepares the official ballot to place the names of all nominees of each party upon the party

tickets. The official in making up the party tickets and official ballot may not refuse to place the name of a nominee upon the ticket of one political party because his name already appears upon that of another political party when his nomination has been duly certified by both parties. The statute clearly contemplates that the names of all persons who are nominated shall be placed upon the ticket of the party making the nomination, and, if one person is nominated by two parties, the name must necessarily be placed upon the official ballot as many times as it appears upon the party tickets. It is true that there are some cases which hold that the name of a person, although he is a candidate of more than one party, may not be placed upon the official ballot more than once under the so-called Australian ballot law from which our law is largely copied. The cases in which this has been held are the following: *State v. Bode,* 55 Ohio St. 224, 45 N. E. 195, 34 L. R. A. 498, 60 Am. St. 696; *De Walt v. Bartley,* 146 Pa. 529, 24 Atl. 185, 15 L. R. A. 771, 28 Am. St. 814; *Todd v. Election Com'rs,* 104 Mich. 474, 62 N. W. 564, 64 N. W. 496, 29 L. R. A. 330; *Runge v. Anderson,* 100 Wis. 523, 76 N. W. 482, 42 L. R. A. 239.

All of those decisions are, however, based upon a statute expressly prohibiting the placing of a name more than once or in more than one place upon the official ballot. In those states it is also provided how the nominees, in case a person is a nominee of more than one party, shall be designated upon the official ballot. There is not a case that we have been able to find, where, in the absence of an express statute forbidding it, it has been held that a candidate's name, under circumstances like those in this case, may not appear upon the official ballot more than once. There is, however, a case, namely, *Murphy v. Curry,* 137 Cal. 479, 70 Pac. 461, 59 L. R. A. 97, in which the Supreme Court of California held a statute forbidding the placing of a candidate's name more than once upon the official ballot unconstitutional. The reasons why such a statute is not unconstitutional are given in the Michigan and Wisconsin cases, *supra,* while the reasons against such a statute are well and clearly stated by Mr. Jus-

tice Henshaw and Mr. Chief Justice Beatty in the California case referred to. But the question before us is not whether, in case there were an express statute forbidding it, we would still hold as we do, but whether, in the absence of a statute, and in face of the express direction of our law to do so, we ought to hold that it is illegal to place a name more than once on the official ballot.

We are convinced that the statutes of this state required the official whose duty it is to prepare the official ballot to place upon it all the party tickets, and upon these tickets the names of all the nominees as certified by the several parties; and, in case he failed to do this, he would violate the plain provisions of the law. If this be so, no legal fraud or deception can arise. The manner in which the official ticket shall be made up and prepared, so long as no constitutional right or privilege is violated, is a legislative, and not a judicial, function. It may be that under some circumstances, in making nominations by delegate conventions, or in filling vacancies by committees, persons may be selected that are not acceptable to all the voters who affiliate with the party making them. If such a person is selected and placed upon a party ticket, it is not a legal fraud upon the voter if such voter is afforded a reasonable opportunity to exercise the elective franchise without voting for the objectionable candidate on his party ticket. Of course, if the law were so framed that a party voter could not exercise the elective franchise and vote for the men of his political faith without also voting for those against whom he objects, the question would be different. Such is not the case. Moreover, the statute (section 831) requires that at least three days before every election the names of all nominees of all parties must be publicly posted up in each election district at a specified place. Every voter may thus fully inform himself of all who are candidates on his and all other party tickets. With the opportunity of obtaining all this information, coupled with the right to vote for as many or as few candidates on each ticket as he chooses, can it still be contended upon any reasonable grounds that a voter has any legal cause for complaint upon the ground that

he was deceived? Can any one ever predicate legal fraud or deception upon the acts of a public official which acts are in strict compliance with the law? A mere statement of the proposition is its best answer. If a voter may be heard to say, after election, that he was deceived because a nominee on his party ticket was not affiliated with his party, why may he not also claim that he was deceived or tricked into voting for a candidate, who in the voter's judgment is not qualified to fill the office, or is dishonest or otherwise objectionable to him? If the voter has been given a fair opportunity to exercise his choice of men, and he has made such a choice by registering his vote, it would lead to interminable difficulties to permit him or any one else to question the legality of the election upon the sole ground that the voter's party nominated men to whom he had some objection, political or otherwise. If this were permitted, no election where the majorities or pluralities are small could be sustained. But, apart from this, no voter is here objecting, and there is no allegation except that upon the information and belief of one who confessedly was not deceived that any one has been deceived. Such an allegation is clearly insufficient. Moreover, the allegations of fraud and deception are directly based upon the manner in which the name of respondent was placed upon the tickets. These tickets, as pointed out, were made up in manner and form required by law. There can, therefore, be no legal fraud or deception predicated upon these matters. Since the statement of contest specifically points out the matters upon which the alleged fraud and deception are predicated and these matters in legal contemplation do not constitute fraud, the allegations in this case, if not a mere conclusion, are nevertheless insufficient although admitted by the demurrer.

In conclusion, we feel constrained to state that with regard to the question of placing the name of a candidate more than once on the official ballot much may be said on either side. Such a law, however, is usually framed in the interest of a political party that holds the balance of power. Where a party has a clear majority of all the votes nothing can be

effected either way by such a law, and where it does not have a majority but only a plurality, we cannot well see why a party should complain if those who are opposed to its doctrines or policies should combine to defeat its candidates for office. The prime object of the law should be to afford the individual voter a fair opportunity to exercise the elective franchise in accordance with the dictates of his judgment and conscience and to protect him in this right. When the law has done this, it can do no more. If the voter will not take the pains to inform himself of either the policies involved or of the character of the candidates who are nominated to effectuate these policies, the law is powerless to help him. Nor can the law be so framed that the voter may make no mistakes. In comparing the election laws of this state with those of many other states who, like Utah, have adopted the Australian ballot law in modified form, we are forced to the conclusion that the Utah law guards the rights of both political parties and individuals as well as do the laws of any state and better than is the case in many states.

The judgment should be, and accordingly is, affirmed, with costs to respondent.

McCARTY, C. J., and STRAUP, J., concur.