## HARRIES v. McCREA, Judge of District Court.

No. 3963.   Decided September 29, 1923.   Rehearing Denied October
31, 1923.   (219 Pac. 533.)

1.  ELECTIONS—OFFICERS—COURT OF EQUITY HAS NO POWER TO IN-
    QUIRE INTO THE VALIDITY OF AN ELECTION OR DETERMINE TITLE
    TO A PUBLIC OFFICE.  In absence of a statute conferring such
    power, a court of equity has no jurisdiction to inquire into
    the validity of an election, or to determine title to a public
    office.[1]

2.  ELECTIONS—IRREGULAR PROCEEDINGS TO CONTEST ELECTION NOT
    DISMISSED WHEN DEFENDANT APPEARED.  Where the electors
    sought to annul the election of a sheriff, but began action by
    summons and complaint, contrary to Comp. Laws 1917, § 2413,
    providing for filing of a statement with the clerk of the dis-
    trict court, such irregularities are waived when the incumbent
    appears without objection, and proceedings cannot be dis-
    missed under section 2415, providing that an election contest
    shall not be dismissed for want of form.

3.  PROHIBITION—WRIT OF PROHIBITION LIES ONLY WHERE COURT IS
    IN EXCESS OF ITS JURISDICTION.  A writ of prohibition will lie
    only where a court is acting clearly without or in excess of
    its jurisdiction, and not to determine the sufficiency of a com-
    plaint or statement or regularity of the proceedings in an elec-
    tion contest.

4.  ELECTIONS—IRREGULAR PROCEEDINGS SUFFICIENT TO GIVE DIS-
    TRICT COURT JURISDICTION AND TO ALLOW CONTEST TO PROCEED
    UNDER STATUTE.  While proceedings to annul the election of
    a sheriff were grossly irregular, held, that under Comp. Laws
    1917, § 2410, specifying the grounds for contesting an election,
    the district court had jurisdiction of the proceedings as an
    election contest.

5.  COSTS—COSTS TAXED AGAINST PARTY PARTIALLY SUCCESSFUL
    UPON FAILURE TO JOIN PARTIES OPPOSING HIM IN THE PROCEED-
    ING.  Though plaintiff, in a petition for a writ of prohibition
    against the district court, partly succeeded to the extent of
    having the court's equitable jurisdiction denied, the costs will
    be adjudged against him, where he fails to join the parties

---

[1] Distinguishing *Payne* v. *Hodgson*, 34 Utah, 269, 97 Pac. 132;
*Hardy* v. *Beaver City*, 41 Utah, 80, 125 Pac. 679.

Prohibition

opposing him in the proceeding, as costs cannot be taxed against the judge.

Original prohibition proceeding by Benjamin R. Harries against William McCrea, Judge of the District Court of Salt Lake County. An alternative writ was issued, to which defendant appeared.

Issuance of a peremptory writ of prohibition DENIED, and proceedings dismissed.

*Stewart, Stewart & Alexander,* of Salt Lake City, for plaintiff.

*Dey, Hoppaugh & Mark, Walton & Walton,* and *H. C. Allen,* all of Salt Lake City, for defendant.

FRICK, J.

The plaintiff filed his application in this court, praying for an alternative writ of prohibition against the defendant, the Honorable William M. McCrea, as judge of the district court of Salt Lake county. An alternative writ was duly issued, to which the defendant has entered his appearance as hereinafter indicated.

From the application it is made to appear that the plaintiff herein was, on the 7th day of November, 1922, elected sheriff of Salt Lake county, Utah; that on the 23d day of December, 1922, Orman W. Ewing, together with a large number of other electors of Salt Lake county, as plaintiffs, commenced an action or proceeding in the district court aforesaid. The introductory part of the complaint in that action reads:

"Come now the plaintiffs, and in behalf of themselves and all others similarly situated, and representing a large number of qualified electors and taxpayers of Salt Lake county, state of Utah, whose names are too numerous to mention, for cause of action against the defendant, complain and allege."

The complaint then proceeds to allege that all of the

plaintiffs are duly qualified electors and taxpayers of Salt Lake county, that Benjamin R. Harries, the plaintiff in this proceeding, was, on the 13th day of November, 1922, declared elected sheriff of Salt Lake county, and that a certificate of election to that effect was issued to him. The plaintiffs then further allege:

"That the electors in the state of Utah, and especially in the said county of Salt Lake, where said election was held, at the time of said election and for many years prior thereto, consisted largely and mainly of members and attendants of Christian churches of various religious denominations, and a majority of said electors were members of the Church of Jesus Christ of Latter Day Saints.

"That the members of said religious body are taught to believe that the directions, orders, and advice emanating from the head officer of said church (said officer being designated and known as the president of the Church of Jesus Christ of Latter Day Saints) is and shall be controlling, not only in spiritual matters but with respect to temporal affairs, and that the requests and advice received from such authority is inspired, and the word of God; and the members of said church have ever been, in the majority of instances, in the habit of obeying such requests and advice.

"That sincerely so believing the members of said church, for years prior to the election herein referred to, have urged and insisted that neither said Church of Jesus Christ of Latter Day Saints, nor any other religious denomination, should in any manner interfere with the affairs of said state, and that the electors and citizens of said state should be permitted freely to exercise the right guaranteed to them by law to cast a free and untrammeled ballot in accordance with their own opinion as to what was best for them and the public.

"That largely because of the conditions aforesaid, and because of the desire of the citizens of said state to separate the church from the state, and to prevent any interference on the part of the church in the administration of the affairs of said state, there was and is incorporated in the Constitution of the state of Utah, as a solemn covenant, the express provision that: 'There shall be no union of church and state, nor shall any church dominate the state or interfere with its functions.'

"That notwithstanding the premises, at the election aforesaid, the Church of Jesus Christ of Latter Day Saints, by and through the president thereof, combining and acting in concert with other religious organizations know as the Ministerial Association of Salt Lake City, resolved and determined to procure the election of the said Benjamin R. Harries, and to do so by exercising the ecclesias-

tical authority of said Church of Jesus Christ of Latter Day Saints, and other religious bodies, and to that end the president of said church, in writing and by speech, directed and instructed the members of the said church (the said instructions being authoritative and purporting to be the inspired word of God) to cast their ballots for the said Benjamin R. Harries, regardless of their personal opinions, because they were so advised by the head of said church.

"That as part of said combination the ministers and heads of other ecclesiastical organizations advised and directed the members of their several churches to vote for the said Benjamin R. Harries for sheriff. That by reason of the undue influence aforesaid, and against the will and personal opinion of the said electors of said county at said election, a large number, to wit, a number sufficient to change the result of said election, were induced and compelled to voted for the said Benjamin R. Harries, which said votes would have been otherwise cast and would have prevented the election of said Benjamin R. Harries had they been permitted to cast a free and untrammeled ballot in accordance with their own conscience and opinion. That the said undue influence was exerted to such an extent that not only were the bishops and teachers of said church required and directed to order said electors (members of said church) to vote for said Benjamin R. Harries, but in addition the ecclesiastical authorities of the Church of Jesus Christ of Latter Day Saints procured the students of the religious school known as the Latter Day Saints College, to attend at the polls of the several election precincts and there, in accordance with the orders of the head of said church, solicit voters to vote for the said Benjamin R. Harries.

"That the intimidation and undue influence aforesaid, so exerted by the Church of Jesus Christ of Latter Day Saints, in conjunction with the other religious organizations, was brought to bear upon the great body of voters so generally as to affect the result of said election, and to induce and procure the election of said Benjamin R. Harries against the will, personal opinion, and intention of the great body of said voters. That said election was not free and equal, but, on the contrary, the result thereof was the result of undue influence and coercion, and the same is wholly invalid.

"That plaintiffs have no adequate remedy in the ordinary course of law.

"Wherefore plaintiffs pray:

"That said election be annulled and held for naught; and that said defendant be enjoined from assuming said office of sheriff, or any of the duties thereof.

"That an order to show cause issue returnable speedily, at a time and place to be fixed by the court, requiring the defendant to appear and show cause why a temporary injunction should not

issue pending the hearing of this cause, and that such temporary injunction issue, and that, upon a final hearing, the same be made perpetual.

"For such other and further relief as may be just and equitable."

The order prayed for was duly issued and a hearing had thereon. The district court refused to issue the injunction prayed for. Demurrers, both general and special, were interposed to the complaint by the plaintiff herein, which the court sustained. Plaintiffs in that proceeding then filed their amended complaint in which they reiterated all of the allegations of their original complaint, and in addition enlarged upon and more specifically stated facts which had been alleged in general terms only in the original complaint. They, however, also made numerous allegations in the amended complaint respecting the tenets of the so-called Mormon Church, and quoted numerous statements made by church officials who acted as such many years prior to the alleged election, and further stated the beliefs of the members of the church, etc., all of which, in our judgment, were too remote to have affected the election of the plaintiff herein, and for that reason those matters will not receive further notice. The plaintiffs in that action, however, also alleged matters respecting the conduct and statements of high church officials of the Mormon Church which directly related to the election of the sheriff of Salt Lake county in 1922, and among which are the following (published in the Deseret News) :

"Statement by First Presidency.

"To avoid misunderstandings, it seems desirable and necessary to set forth our position with reference to matters political, which at the present time claim so much of the attention of the people.

"It is an accepted principle of the Church of Jesus Christ of Latter Day Saints that every member shall be at perfect liberty to identify himself with the political party of his choice, and give support to the candidates whom he regards as best suited to hold office. The church urges intelligent active participation of its members in the affairs of state. Such participation is not denied the officials of the church, including the president and his counselors. It is to be clearly understood, however, that the political preferences of church members or church officials are not to be regarded as church preferences. The church has no political party

or candidate preferences. Any one making representation to the contrary is unfriendly to the church and to its interests.

"It should also be clearly understood that any personal preference entertained or expressed by any official of the church carries with it only such weight or influence as would characterize the personal opinion of any man of commensurate standing and prestige among his fellows. No person not duly accredited is authorized to speak for the president of the church or its presiding councils. Whenever it is desired to set forth their views the authenticity of the statement will be beyond question. The reprehensible practice indulged in by some of pretending to represent the opinions and desires of the presiding officials of the church in political affairs is hereby emphatically denounced, and members of the church, and all other persons, are warned against belief in any such unwarranted representation.

"It must not be gathered from the foregoing that the church does not feel free to use its influence in the promotion of good legislation, honest administration of government, and matters calculated to benefit the state and its people, and we likewise duly feel under obligation to exert its influence against introduction into our political organizations of practices and methods which are inimical to the free exercise of American rights and principles.

"We stand for political freedom in its widest and best sense. We deplore political subterfuge and trickery. We appeal for political integrity and toleration.

"Heber J. Grant.
· "Charles W. Penrose.
"A. W. Ivins."

They further allege that in the same issue of the said newspaper was published the following:

"Communication from President Heber J. Grant.

"Salt Lake City, Nov. 3, 1922.

"To Members of the Church, Residing in Salt Lake County:

"Dear Brethren and Sisters: For a number of years, the church, through several of its general auxiliary organizations, has contributed to the support of the Social Welfare League of Salt Lake City. This organization, under the leadership of Dean Milton Bennion of the University of Utah, has undertaken to bring about the co-operation of churches, agencies, and moral forces within the county of Salt Lake for the better enforcement of law and the improvement of social conditions.

"In an earnest effort to advance the cause for which it stands, the league has secured the nomination of an independent candidate for the office of sheriff. This action has been induced wholly without reference to partisan political considerations, and rests entirely

Harries v. McCrea, 62 Utah 348

upon the conviction, born of a long experience with administrators of the law, that the social and moral welfare of the community will be best subserved in the election of a candidate without political ties of any sort whatsoever, who is committed to the exclusive platform of law enforcement and social betterment, and whose allegiance shall be avowedly to the league and its large constituency of institutions and people favorable to the strict enforcement of the law and the maintenance of high moral standards.

"We give our full support and sanction to the worthy objects sought to be accomplished by the Social Welfare League in furthering the candidacy of Mr. Ben R. Harries, independent candidate for sheriff. We urge members of the church and all other good citizens of the county, who stand for clean, wholesome government, to co-operate with the league in securing the election of its candidate. In so doing, we disclaim any intention to exert influence in partisan politics. The questions and conditions involved are essentially moral ones. On all such questions we reserve the right to speak, even though they involve political considerations, as we have heretofore announced in our published statement. No member of the church is under the least coercion or restraint in the expression of his opinion at the polls. We appeal merely to the judgment of men and women in support of a movement which we believe to be calculated to promote the welfare of all good people who reside in Salt Lake county. Heber J. Grant, President of the Church of Jesus Christ of Latter Day Saints."

It is further alleged in the complaint that the following was also published in said newspaper:

"Election of Sheriff Looked Upon as Moral Not Political, Issue.
"Security of Home Lies in the Election of the Independent
                              Candidate.

"There is a goal to work to in this business of electing Benjamin R. Harries for sheriff—a purpose. Reaching it will solve the prevailing situation. Shall the law be enforced? The good people of Salt Lake City have apparently united to this end. Harries will enforce it. Never before has such an opportunity, nor such a united effort, as now, presented itself, with only one or two exceptions—and these are favorable to the movement, though no public group action has been taken to that end—all the churches of Salt Lake county are seemingly united in a forceful endeavor to clean up the moral situation."

The articles above referred to, it is alleged, were published in the Deseret News, a newspaper of general circulation in Salt Lake county, and a paper recognized as the official organ of the Mormon Church.

It is then specifically alleged that the acts of the minis-terial association and those of the church officials of the Mormon Church constituted undue influence, and that the plaintiff herein knew and participated in the unlawful acts aforesaid.

There are numerous additional allegations to the same effect, which it is not necessary to repeat here.

The plaintiffs in that action prayed for the relief as here-inbefore set forth.

The plaintiff in this proceeding again filed general and special demurrers to the amended complaint and also moved to strike numerous of the allegations therefrom. The district court overruled the demurrers and also denied the motion to strike. The plaintiff herein then instituted this proceeding to prohibit the district court from proceeding further in the action, upon the ground that said court is acting with-out and in excess of jurisdiction. The contention of the plaintiff herein is that the proceeding commenced and pending against him in the district court is an action or proceeding in equity, that it is a proceeding to annul or set aside a general election duly and legally held, and that a court of equity has no power or jurisdiction of such an action or proceeding.

The defendant in this proceeding has filed a general de-murrer to the application. He contends (1) that a court of equity has power and jurisdiction to inquire into and to annul an election; and (2) that, although that were held not to be so, yet he insists that this is a statutory proceed-ing to contest the election of the plaintiff herein, and that therefore prohibition will not lie.

We therefore proceed to determine, first, whether a court of equity, in the absence of a statute conferring such power, has inherent power or jurisdiction to inquire into the validity of an election or to determine the right or title to a public office.

The contention of the defendant in this proceeding, stating it in the language of his counsel, is:

"The district court has original jurisdiction of all matters

juridical in their nature; and the subject of this suit is juridically cognizable, independently of the contest statute, by the district court, and especially as a court of equity."

There is no statute in this state conferring power or jurisdiction upon courts of equity to inquire into the validity or regularity of elections. The decisions of the courts are practically unanimous that, in the absence of such a statute, courts of equity have no inherent power or jurisdiction to interfere with the election returns, and that the regularity or validity of elections can only be inquired into in proceedings in the nature of quo warranto or in such election contests as are provided by statute. In this jurisdiction, as we shall hereinafter show, we have a statute specifically providing for election contests and also for proceedings in the nature of quo warranto, in either or both of which proceedings the validity of elections and the rights to public offices may be determined.

In *Moore* v. *Hoisington*, 31 Ill. 243, the question respecting the jurisdiction of courts of chancery was before the Supreme Court of Illinois, and it is there said: "A court of chancery has no jurisdiction to inquire into the validity of elections."

In *Dickey* v. *Reed*, 78 Ill. 261, the Moore Case is followed by the same court. In the latter case the subject is exhaustively considered. In the course of the opinion it is there said:

"But did the court have a general power to hear and determine as to the fairness of the result of elections in this class of cases, on the requisite facts being stated in the bill? If so, then the court had power over the subject-matter, although the facts were so defectively stated as to fail to confer jurisdiction in the particular case. We think clearly not, because no state of facts, however stated, could confer power to adjudicate in that class of cases. We are aware of no adjudged case, or text-writer, who has ever announced the power as inherent in the courts of equity, to try contested elections between persons claiming an office, or in a case of this character. It is believed that no case can be found, where an English court of chancery has ever tried a contested election where the public were concerned. And such cases are believed to be of rare occurrence in this country, and then only

where the power has been conferred by express enactment or necessary implication therefrom."

In *Hinckley* v. *Breen,* 55 Conn. 119, 9 Atl. 31, it is held that a court of equity is without power to try the title to a public office.

In *Cochran* v. *McCleary,* 22 Iowa, 75, it is held:

"The right to a public office * * * cannot be determined in equity."

In *Schieffelin* v. *Komfort,* 212 N. Y. 520, 106 N. E. 675, L. R. A. 1915D, 485, the Court of Appeals of New York considered the question of the jurisdiction of courts of equity in election contests, and, after citing many cases in support of its conclusion that courts of equity have no jurisdiction in such proceedings, the opinion concludes as follows:

"It is the settled law in this state that equity has no jurisdiction over contest for office, even if the election is claimed to be void. Parties aggrieved are required to assert their rights in proceedings provided by statute or in actions at law."

By referring to "actions at law," the court refers to the common-law action in the nature of quo warranto.

In *O'Connor* v. *High School Board,* 278 Ill. 618, 116 N. E. 119, it is again held that a court of equity is powerless to interfere with the declared results of elections. In the course of the opinion it is said:

"It has been so long and so thoroughly determined that a court of chancery has no inherent jurisdiction of the contest of an election that a citation of authorities only is necessary"—citing authorities.

In a note following the decision of *Walls* v. *Brundidge,* Ann. Cas. 1915C, at page 989, a large number of the more recent cases are collated, in all of which it is held that courts of equity, without expressly or by necessary implication being authorized so to do, have no jurisdiction to inquire into the validity of elections.

In *Markert* v. *Sumter County,* 60 Fla. 328, 53 South. 613, Ann. Cas. 1912C, 690, it is held:

"The jurisdiction of courts having general equity powers does not include mere election contests of any kind unless so provided expressly or impliedly by organic or statute laws."

In a note following the case of *Harrison* v. *Stroud,* 16 Ann.

Cas. 1050, the annotator cites a large number of cases in which it is held that courts of equity are powerless to interfere in election controversies. It is there said:

"The real point at issue in cases of this character is the title to the office, and it is a settled principle that a court of equity has not jurisdiction to try a disputed title to a public office. The determination of that question can be had only in an action in the nature of quo warranto, or in an election contest, as prescribed by statute."

In Paine on the Law of Elections, the author states the law thus:

"Courts of equity have no inherent power to try contested elections, and they have never exercised such power except in cases where it has been conferred by express enactment or by necessary implication."

McCrary on Elections (4th Ed.) § 317, is to the same effect. Numerous other cases to the same effect might be cited, but it is not deemed necessary to do so. Indeed, we have found no well-considered case that holds to the contrary.

Counsel for defendant, however, have cited and rely on *Irmegar* v. *Tazewell County*, 264 Ill. 172, 106 N. E. 227; *Ralston* v. *Meyer*, 34 W. Va. 737, 12 S. E. 783; *Marsden* v. *Troy* (Tex. Civ. App.) 189 S. W. 960; *Burns* v. *Lackey*, 171 Ky. 21, 186 S. W. 909, and *Neelley* v. *Farr*, 61 Colo. 485, 158 Pac. 458, Ann. Cas. 1918A, 23. The foregoing cases, however, all involve election contests under a statute, and hence can have no bearing upon the question of the jurisdiction of courts of equity to inquire into the validity of elections. No further reference to those cases is necessary.

The case of *Marsden* v. *Harlocker*, 48 Or. 90, 85 Pac. 328; 120 Am. St. Rep. 786, also cited by defendant, involved property rights growing out of a local option election. Courts of equity have always exercised jurisdiction over property rights, regardless of how the controversy arose. The question of determining whether a particular person is entitled to a public office or not is, however, purely political, and courts of equity are created to protect and enforce property and not political rights.

Defendant's counsel also cite and specially rely on *People v. Tool,* 35 Colo. 225, 86 Pac. 224, 229, 231, 6 L. R. A. (N. S.) 822, 117 Am. St. Rep. 198. In that case it is held that, in view that the Constitution of Colorado conferred power on the Supreme Court of that state to issue writs of injunction, therefore the Supreme Court had authority to "enjoin a conspiracy to commit illegal and fraudulent acts which will result in the pollution of the ballot box and the perversion of an election, though the acts charged if committed, constitute criminal offenses." Indeed, it will be found that courts of equity have frequently enjoined the holding of elections under statutes which were confessedly invalid or unconstitutional. That, however, is not interfering with an election duly called and held.

In *Patterson* v. *People,* 23 Colo. App. 479, 130 Pac. 618, also cited by defendant, the Court of Appeals of Colorado, under a peculiar provision of the Colorado Constitution, held that, in view that there was no other remedy provided by the Colorado statute, a court of equity had jurisdiction to determine the validity of a local option election.

Other cases are cited by defendant, but in none of them is there anything contrary to the general rule we have hereinbefore stated.

It is, however, also insisted that, in view that this court held, in the case of *Payne* v. *Hodgson,* 34 Utah, 269, 97 Pac. 132, and in *Hardy* v. *Beaver City,* 41 Utah, 80, 125 Pac. 679, that an election contest under our statute is not exclusive but is a cumulative remedy, therefore a court of equity has jurisdiction. Both of those cases were election contests under the statute, and what is there said respecting the cumulative character of an election contest under our statute has reference to an action or proceeding in the nature of quo warranto and to nothing else. By reference to the authorities cited in *Payne* v. *Hodgson,* supra, it will clearly appear that we held that the title to a public office can be determined either in an election contest, if timely commenced, or in an action in the nature of quo warranto.

After a careful examination and consideration of the authorities, the conclusion is forced upon us that where,

as ,in this jurisdiction, the statute provides a remedy to determine the right to an office or the validity of an election, the courts of equity are without jurisdiction, and hence have no power in such matters.

It also seems quite clear that this proceeding cannot be converted into a proceeding in the nature of quo warranto, and therefore the only other question to be determined is, Can it be permitted to proceed as an election contest?

Comp. Laws Utah 1917, § 2410, provides:

"The election of any person to any public office, * * * may be contested:

"1. For malconduct, fraud, or corruption on the part of the judges of election at any polling place, or of any board of canvassers, or any member of either board, sufficient to change the result;

"2. When the incumbent was not eligible to the office at the time of the election;

"3. When the incumbent has given or offered to any elector or any judge or canvasser of the election, any bribe or reward in money, property, or anything of value, for the purpose of procuring his election, or has committed any other offense against the elective franchise defined by law;

"4. When illegal votes have been received, or legal votes have been rejected at the polls sufficient to change the result;

"5. For any error of any board of canvassers or of the judges of election, * * * if the error would change the result;

"6. For any other cause which shows that another person was legally elected.

"The term incumbent in this section means the person whom the canvassers declare elected."

Section 2413 reads as follows:

"When an elector contests the right of any person declared elected to such office, he must, within forty days after the return day of the election, file with the clerk of the district court of the county within or for which such offce is to be exercised a written statement, setting forth specifically:

"1. The name of the party contesting such election, and that he is an elector of the county, precinct, city, school district, or of any subdivision of either, as the case may be, in which the election was held; '

"2. The name of the person whose right to the office is contested;

"3. The office;

"4. The particular grounds .of such contest; affidavit of the

contesting party, that the matters and things therein contained are true, except as to those matters therein stated upon his information or belief, and that as to those matters he believes it to be true."

Section 2415 provides:

"No statement of the grounds of contest will be rejected, nor the proceedings dismissed by any court for want of form, if the grounds of contest are alleged with such certainty as will advise the defendant of the particular proceeding or cause for which such election is contested."

The statute further provides that, in case the statement for an election contest is filed, it must be brought to the attention of the district court by the clerk, and the court must then fix a time "not less than ten nor more than 30 days from the date of the filing of such statement to hear and determine such contested election," whereupon the clerk must "issue a citation" to the person whose right to the office is contested to appear at the time and place specified in the citation and which must be delivered to the sheriff and served by him at least five days before the date fixed for the hearing.

The action brought against the plaintiff herein was, however, commenced by the issuance and service of a summons in the usual form in ordinary actions. The plaintiff herein, however, appeared in the action without objection and hence may be deemed to have waived the form of process. Moreover, in view that the statute (section 2415, **2** supra) expressly provides that an election contest shall not be dismissed "for want of form," the mere fact that a proceeding was commenced by the issuance and service of a summons rather than by the service of the citation provided by the statute cannot vitiate the proceeding.

The same may be said respecting the complaint filed in the action against the plaintiff herein. No doubt, if the statement filed in an election contest were called a complaint, that fact, standing alone, would likewise not affect the validity of the proceeding. Nor would the fact that the allegations contained in the complaint or statement were defective, or even deficient, affect the jurisdiction of the court.

The proceeding against the plaintiff herein was com-

menced within the time required by section 2413, supra, and hence the jurisdiction of the court cannot be successfully assailed on that ground.

By reference to section 2410, supra, in which the grounds for which an election may be contested are stated, it also seems that they are sufficiently broad to cover at least some of the matters alleged in the so-called complaint filed against the plaintiff herein. By making that statement the writer does not want to be understood as intimating, much less as deciding that the allegations contained in the so-called complaint are sufficient to authorize the district court to declare the election invalid, or that the plaintiff herein has not the legal title to the office of sheriff of Salt Lake county. What is meant is, that, in view that the district court has jurisdiction over election contests, whether the allegations of the complaint or contest statement are sufficient or insufficient cannot be determined in a proceeding like the one at bar. Prohibition will lie only in case a court is clearly acting without or in excess of jurisdiction of the subject-matter, and where there is not a speedy or adequate remedy by appeal. The fact, therefore, that the proceedings are grossly irregular or that the pleadings are defective either in form or substance cannot affect the right or power of the court to proceed, if it has jurisdiction of 'the subject-matter. While the writer is of the opinion that the proceeding commenced against the plaintiff herein is a proceeding in equity pure and simple, and that it was manifestly intended as such by the plaintiffs in that proceeding and their counsel, and that the district court, acting as a court of equity, is clearly without jurisdiction to proceed farther, yet, in view of the provisions of our statute to which reference has been made, and in view that the majority of the members of this court are of the opinion that the proceeding may, under our statute, be considered as an election contest, and for that reason a peremptory writ of prohibition should be denied and the district court permitted to proceed with the case as an election contest, I yield to the judgment of the majority. In order to avoid any misconception, however, we desire again to add that by anything

Prohibition

that has been said or omitted herein we do not wish to be understood as holding that the allegations in the so-called complaint are sufficient in substance or that they are sufficiently specific to comply with the provisions of the election contest statute to enable the plaintiff herein to intelligently defend the action, or that if the allegations are established as alleged in their general form they would be sufficient to authorize the court to hold the election of plaintiff herein as sheriff invalid. All that we here hold is, that the proceeding commenced against the plaintiff herein may proceed as an election contest under the statute, and hence that the district court had jurisdiction of the proceeding and may proceed therein as in an ordinary election contest.

It will be observed that the plaintiff herein has succeeded to the extent of having the district court's power to proceed as a court of equity denied, and hence the costs of this proceeding might well be apportioned between the parties, yet, in view that the plaintiff did not make any of the plaintiffs in the action against him parties to this proceeding, but merely brought the action against the judge of the district court, we cannot, in view of the numerous decisions of this court, tax costs against the judge, and hence the costs of this proceeding should be taxed against the plaintiff herein.

In view of what has been said, therefore, it follows that the issuance of a peremptory writ of prohibition should be, and it accordingly is, denied, and this proceeding dismissed at plaintiff's cost.

WEBER, C. J., and THURMAN and CHERRY, JJ., concur.

GIDEON, J., concurs in the order denying the writ.